# No. 23-3265

IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

**ALEXANDER SMITH,**
*Plaintiff-Appellant,*

*v.*

**CITY OF ATLANTIC CITY et al.,**
*Defendants-Appellees.*

---

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY
CHRISTINE P. O'HEARN, DISTRICT JUDGE • CASE NO. 1:19-CV-06865

---

# BRIEF OF THE SIKH COALITION AND
# ISLAM AND RELIGIOUS FREEDOM ACTION TEAM
# AS AMICI CURIAE IN SUPPORT OF
# PLAINTIFF-APPELLANT

---

HORVITZ & LEVY LLP
SCOTT P. DIXLER
JASJAAP S. SIDHU
3601 WEST OLIVE AVENUE, 8TH FLOOR
BURBANK, CALIFORNIA  91505-4681
(818) 995-0800

HORVITZ & LEVY LLP
JEREMY B. ROSEN
505 SANSOME STREET, SUITE 1550
SAN FRANCISCO, CALIFORNIA  94111-3149
(415) 462-5600

ATTORNEYS FOR AMICI CURIAE
**THE SIKH COALITION AND ISLAM AND RELIGIOUS
FREEDOM ACTION TEAM**

## DISCLOSURE STATEMENT

Pursuant to Rules 26.1 and 29(a)(4)(A) of the Federal Rules of Appellate Procedure, and Rule 26.1.1 of the Local Appellate Rules, Amici state that they are both nonprofit organizations with no parent corporation, nor do they issue any stock.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................iv

STATEMENT OF IDENTIFICATION ..................................................... 1

INTRODUCTION ............................................................................... 4

ARGUMENT .................................................................................... 6

I.    For many years, employers were unwilling to accommodate members of minority faiths, like Sikhs and Muslims, who maintained beards for religious reasons. ....................................... 6

    A.    Title VII has long required employers to accommodate employees' religious obligations............................................. 6

    B.    Sikhs and Muslims, who often wear beards for religious purposes, long faced persistent difficulties in the workplace. ........................................................................ 7

II.    In recent years, employers have been making an effort to accommodate religious beards and, when employers do not, courts have rejected their claims that an accommodation would pose an "undue hardship." ................................................. 11

III.    Against this recent trend of beard accommodations, the ACFD is taking a different tack in this case and sending a clear message to people who maintain beards for religious reasons and wish to serve their community: you need not apply. ............................................................................ 17

CONCLUSION .................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abramson v. William Paterson Coll. of N.J.*,
260 F.3d 265 (3d Cir. 2001) ................................................................. 6

*Bailey v. Metro Ambulance Servs., Inc.*,
992 F.3d 1265 (11th Cir. 2021) .......................................... 12, 13, 19, 20

*Bey v. City of New York*,
999 F.3d 157 (2d Cir. 2021) ........................................ 11, 12, 13, 19, 20

*Bhatia v. Chevron U.S.A., Inc.*,
734 F.2d 1382 (9th Cir. 1984) ............................................................. 8

*EEOC v. Abercrombie & Fitch Stores, Inc.*,
575 U.S. 768 (2015) ................................................................... 16, 20

*EEOC v. United Parcel Serv.*,
94 F.3d 314 (7th Cir. 1996) ............................................................... 11

*EEOC v. United Parcel Serv., Inc.*,
587 F.3d 136 (2d Cir. 2009) .............................................................. 11

*Groff v. DeJoy*,
600 U.S. 447 (2023) ................................................................. *passim*

*Hart v. J. T. Baker Chem. Co.*,
598 F.2d 829 (3d Cir. 1979) .............................................................. 16

*Hebrew v. Texas Dept. of Crim. Just.*,
80 F.4th 717 (5th Cir. 2023) ...................................... 10, 13, 14, 18, 20

*Kalsi v. N.Y.C. Transit Auth.*,
62 F.Supp.2d 745 (E.D.N.Y. 1998) ...................................................... 8

*Singh v. Berger*,
56 F.4th 88 (D.C. Cir. 2022) ............................................................. 14

*Smith v. City of Atl. City*,
No. 16-cv-6865, 2023 WL 8253025 (D.N.J. Nov. 28, 2023) .... 17, 18, 19

*Sughrim v. New York*,
No. 19-cv-7977, 2023 WL 5713191 (S.D.N.Y. Sept. 5, 2023) ............. 14

*Trans World Airlines, Inc. v. Hardison*,
432 U.S. 63 (1977) ......................................................................... 6, 21

*Valdes v. New Jersey*,
313 F.App'x 499 (3d Cir. 2008) ........................................................ 10

## Rules

Fed. R. App. P. 29(a)(4)(E) ..................................................................... 3

## Miscellaneous

*A Brief Introduction to the Beliefs and Practices of the Sikhs*,
The Sikh Coalition (2008), https://tinyurl.com/t3dxycej ...................... 7

*Accommodating Sikhs in the Workplace: An Employer's Guide*, The Sikh Coalition 1, 7 (2022),
https://tinyurl.com/3hbmypvj .............................................................. 7

*An Employer's Guide to Islamic Religious Practices*, Council on American-Islamic Relations (2005),
https://tinyurl.com/242afhzj ................................................................ 9

Eugene Volokh, *The EEOC, Religious Accommodation Claims, and Muslims*, Wash. Post (June 21, 2016),
https://tinyurl.com/44sx78ra ............................................................. 10

Press Release, Department of Justice, Justice Department Seeks Court Order to Stop California Department of Corrections from Requiring Correctional Officers to Violate Religious Beliefs (Mar. 25, 2024) (accessible at https://www.justice.gov/opa/pr/justice-department-seeks-court-order-stop-california-department-corrections-requiring) ........................................................................................ 15

v

Press Release, EEOC, Blackwell Security Services Will Pay
$70,000 to Settle EEOC Religious Discrimination Lawsuit
(Jan. 31, 2024) (accessible at
https://www.eeoc.gov/newsroom/blackwell-security-
services-will-pay-70000-settle-eeoc-religious-
discrimination-lawsuit) ..................................................................... 15

Press Release, EEOC, Triple Canopy, Inc. to Pay $110,759 to
Settle EEOC Religious Discrimination and Retaliation
Lawsuit (Dec. 26, 2023) (accessible at
https://www.eeoc.gov/newsroom/triple-canopy-inc-pay-
110759-settle-eeoc-religious-discrimination-and-
retaliation-lawsuit) ........................................................................... 15

*Update: Sikh Medical Professionals and PPE*, The Sikh
Coalition (May 13, 2020), https://tinyurl.com/mwnzu5r8 ............... 8, 9

# AMICI CURIAE BRIEF OF THE SIKH COALITION AND ISLAM AND RELIGIOUS FREEDOM ACTION TEAM

## STATEMENT OF IDENTIFICATION

**The Sikh Coalition** is the largest community-based organization working to protect Sikh civil rights across the United States. The Sikh Coalition's goal is working towards a world where Sikhs, and other religious minorities in America, may freely practice their faith without bias and discrimination. Since its inception, the Sikh Coalition has worked to defend civil rights and liberties for all people, empower the Sikh community, create an environment where Sikhs can lead a dignified life unhindered by bias or discrimination, and educate the broader community about Sikhism. For over two decades, the Sikh Coalition has also led efforts to combat and prevent discrimination against Sikhs in the workplace, including by advocating for religious accommodations and against policies which require Sikhs to choose between their religious beliefs and their career.

**The Islam and Religious Freedom Action Team** ("IRF") of the Religious Freedom Institute amplifies Muslim voices on religious freedom, seeks a deeper understanding of the support for religious freedom inside the teachings of Islam, and protects the religious

freedom of Muslims.  To this end, the IRF engages in research, education, and advocacy on core issues including freedom from coercion in religion and equal citizenship for people of diverse faiths.  The IRF explores and supports religious freedom by translating resources by Muslims about religious freedom, fostering inclusion of Muslims in religious freedom work, both where Muslims are a majority and where they are a minority, and by partnering with the Institute's other teams in advocacy.

The Sikh Coalition and the IRF (collectively "Amici") file amicus briefs in cases that are central to their missions, and the Supreme Court has cited their briefing when addressing the scope of religious accommodation requirements.  *See Groff v. DeJoy*, 600 U.S. 447, 465 (2023) (citing brief of The Sikh Coalition, IRF, and Muslim Advocates).

Amici are deeply concerned that the denial of reasonable accommodations and the broad interpretation of "undue hardship" disproportionately deny minority communities equal access to employment opportunities.  The issues at stake in this case relate directly to the right of practitioners of minority faiths in America to avail themselves of employment opportunities on equal terms.  Amici

submit this brief in the hope that this Court will protect the religious rights of all Americans in the workplace.[1]

---

[1] Pursuant to Rule 29(a)(4)(E) of the Federal Rules of Appellate Procedure, Amici state that, other than Amici and their counsel, no party, their counsel, or any other person authored this brief (in whole or in part) or contributed money intended to fund the preparation or submission of this brief.

## INTRODUCTION

Congress enacted Title VII of the Civil Rights Act of 1964 to ensure that employees are not forced to choose between their job and their religion, and to secure equal economic opportunity to adherents of all faiths. But for many years, employers were unwilling to accommodate employees who maintained beards for religious reasons, and courts often blessed claims that a beard accommodation would impose an undue hardship.

In recent years, that trend has begun to shift. Some employers now willingly accommodate religious beards, such as those worn by observant Sikhs and Muslims. That includes employers in the emergency services industry like the New York City Fire Department ("FDNY"). Consistent with the goal of Title VII, these accommodations ensure that people with religious beards can serve their communities, as firefighters or otherwise, without compromising their faith.

Bucking that recent trend, the Atlantic City Fire Department ("ACFD") took a different tack in this case. Unlike the FDNY and other emergency services employers, the ACFD did not consider whether plaintiff Alexander Smith could work in a role that would allow him to

maintain his beard.  Instead, the ACFD took the position that every member of the department—no matter their role, and no matter the requirements of their faith—must be clean shaven.

The ACFD has thus sent a clear message to Sikhs, Muslims, and others who maintain beards for religious reasons and wish to serve their community: you need not apply.  By shutting the fire station door to these groups, the ACFD has undermined the recent trend of accommodations and harkened back to an era when employers unjustifiably denied reasonable accommodations of religious beards. The ACFD's position in this case is at odds with the purpose of Title VII: to create an economy in which workers need not sacrifice their faith to make a living.

For the reasons that follow, and the reasons in Smith's brief, this Court should reverse and remand.

# ARGUMENT

I. **For many years, employers were unwilling to accommodate members of minority faiths, like Sikhs and Muslims, who maintained beards for religious reasons.**

A. **Title VII has long required employers to accommodate employees' religious obligations.**

Title VII aims to ensure that employees are not faced with the "'cruel choice' between religion and employment." *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 290 (3d Cir. 2001) (Alito, J., concurring). To accomplish that goal, Title VII requires employers to make "reasonable accommodations" to the religious needs of an employee unless that accommodation would impose an "undue hardship" on the conduct of the employer's business. *Groff*, 600 U.S. at 457. Whether a particular accommodation poses an "undue hardship" is a "fact-specific inquiry" that "takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, 'size and operating cost of [an] employer.'" *Id.* at 468, 470–71 (alteration in original).

The "purpose and primary effect" of Title VII's accommodation scheme "is the wholly secular one of securing equal economic opportunity to members of minority religions." *Trans World Airlines,*

*Inc. v. Hardison*, 432 U.S. 63, 90 n.4 (1977) (Marshall, J., dissenting) (dissent cited favorably in *Groff*, 600 U.S. at 457–64). That includes minority faiths like Sikhism and Islam.

**B.      Sikhs and Muslims, who often wear beards for religious purposes, long faced persistent difficulties in the workplace.**

Though a minority in the United States, Sikhism is the fifth-largest religion in the world, and its followers are guided by three daily principles: work hard and honestly, always share your bounty with the less fortunate, and remember God in everything you do. *A Brief Introduction to the Beliefs and Practices of the Sikhs*, The Sikh Coalition (2008), https://tinyurl.com/t3dxycej.

Sikhs outwardly display their commitment to these principles and beliefs by wearing the Kakaars, or the five articles of faith: unshorn beards and unshorn head hair, which men cover with a turban and which women may cover with a scarf or turban (Kesh); a small comb usually placed within one's hair (Kanga); soldier shorts traditionally worn as an undergarment (Kachera); a swordlike instrument worn with a shoulder strap (Kirpan); and a bracelet worn on one's wrist (Kara). *Accommodating Sikhs in the Workplace: An Employer's Guide*, The Sikh

Coalition 1, 7 (2022), https://tinyurl.com/3hbmypvj.  These articles of faith sometimes require modest workplace accommodations.

But for many years, employers denied Sikh employees' accommodation requests because of safety-based concerns—including concerns stemming from unshorn hair—and courts often blessed those denials.  *See, e.g.*, *Bhatia v. Chevron U.S.A., Inc.*, 734 F.2d 1382, 1383–84 (9th Cir. 1984) (holding unshorn hair created an undue hardship because it prevented an employee from wearing a respirator needed to prevent toxic gas exposure); *Kalsi v. N.Y.C. Transit Auth.*, 62 F.Supp.2d 745, 760 (E.D.N.Y. 1998) (holding turban created an undue hardship because it prevented wearing a hard hat during hazardous work), *aff'd*, 189 F.3d 461 (2d Cir. 1999).

During the early stages of the COVID-19 pandemic, Sikh healthcare workers struggled to obtain reasonable accommodations for their beards.  *See Update: Sikh Medical Professionals and PPE*, The Sikh Coalition (May 13, 2020), https://tinyurl.com/mwnzu5r8.  Medical professionals needed to wear personal protective equipment to prevent the virus's spread.  Many used the low-cost N95 mask, but some employers prohibited male healthcare workers with facial hair from

wearing N95 masks.  Even though there were several equally safe, and even safer options that Sikh men could have used (e.g., power supplied air respirators and controlled air purifying respirators), those options cost more than N95s, and many employers therefore refused to adopt them.  As a result, employers threatened Sikh doctors, nurses, and technicians with suspension or termination if they refused to violate their faith by shaving or cutting their hair.  *Id.*

Muslims have had similar experiences to Sikhs.  Many Muslims believe that their faith requires them to observe certain practices, including praying five times a day at set times (Salat), attending weekly congregational worship on Fridays (Jum'ah), fasting from dawn to sunset for a month each year (Ramadan), and observing two annual days of festivity (Eid).  *An Employer's Guide to Islamic Religious Practices*, Council on American-Islamic Relations (2005), https://tinyurl.com/242afhzj.  Islam prescribes that both men and women dress modestly.  *See id.*  Many Muslim women wear a head covering, such as a hijab, while some others may cover their face.  *See id.*  And many Muslim men wear beards for religious reasons, and some wear a small head covering called a kufi.  *See id.*

Though Muslim Americans comprised 1% of the U.S. population, from 2009 to 2015, Muslim workers submitted 19.6% of all complaints to the Equal Employment Opportunity Commission ("EEOC"), and 26% of EEOC lawsuits were brought on behalf of Muslim employees. Eugene Volokh, *The EEOC, Religious Accommodation Claims, and Muslims*, Wash. Post (June 21, 2016), https://tinyurl.com/44sx78ra.

Like Sikhs with beards, Muslims with beards were long denied reasonable accommodations. For example, in *Valdes v. New Jersey*, a correctional facility refused to allow a Muslim trainee to maintain a short, one-eighth inch beard. 313 F.App'x 499, 500 (3d Cir. 2008). Well before *Groff* clarified the proper scope of Title VII, this Court affirmed the district court's ruling that the correctional facility's refusal to accommodate the Muslim trainee's beard did not violate Title VII. *See id.* at 501; *compare id.*, *with Hebrew v. Texas Dept. of Crim. Just.*, 80 F.4th 717, 724 (5th Cir. 2023) (holding correctional facility failed to establish that accommodating beard would impose undue hardship under *Groff*).

Similarly, in the late 1990s, the EEOC brought suit against UPS for its failure to reasonably accommodate a Muslim employee who

refused to shave for religious reasons. *See EEOC v. United Parcel Serv.*, 94 F.3d 314, 315 (7th Cir. 1996). Over a decade later, little had changed: the EEOC was once again forced to investigate claims that UPS refused to hire Muslim applicants who maintained beards. *EEOC v. United Parcel Serv., Inc.*, 587 F.3d 136, 137–38 (2d Cir. 2009).

These experiences of Sikh and Muslim workers demonstrate that for many years, whether based on safety concerns or other reasons, employers were unwilling to reasonably accommodate beards that employees maintain for religious purposes. And as *Groff* noted, that trend of denying accommodations made it "harder for members of minority faiths to enter the job market." 600 U.S. at 465. In recent years, however, that trend has slowed.

## II. In recent years, employers have been making an effort to accommodate religious beards and, when employers do not, courts have rejected their claims that an accommodation would pose an "undue hardship."

In support of Title VII's goal of providing equal access to the workplace, employers in recent years have made an effort to accommodate employees who maintain beards for religious reasons. Consider, for example, the FDNY. Under the FDNY's policy, full duty firefighters must be clean shaven. *See Bey v. City of New York*, 999

F.3d 157, 161 (2d Cir. 2021). For several years, the FDNY offered

medical and religious exemptions to that policy. *See id.* at 161–62 &

n.2. In 2018, the FDNY eliminated those exemptions. *Id.* at 162. But

when it did that, the FDNY did not terminate or otherwise punish

firefighters who could not comply with the policy for medical or religious

reasons. Instead, the FDNY offered them an accommodation:

placement in a "light duty" role. *Id.* Unlike full duty firefighters, light

duty firefighters "do not fight fires," but "they keep the same title,

salary, and benefits that they had on full duty." *Id.* at 162 n.3. The

FDNY thus balanced its safety concerns about beards with the religious

needs of its employees.[2]

Other emergency response employers have also recently provided

beard accommodations. In *Bailey v. Metro Ambulance Servs., Inc.*, the

employer was an ambulance service offering emergency and

---

[2] The plaintiffs in *Bey* rejected the offer to work in a light-duty role
and sued the FDNY, and the Second Circuit held that allowing the
plaintiffs to work in a full-duty firefighting role while maintaining a
beard would pose an undue hardship. *See Bey*, 999 F.3d at 170–71. But
regardless whether FDNY established an undue hardship in *Bey*, one
thing is clear: unlike the ACFD here, *see infra* Section III, the FDNY at
least offered a light duty accommodation that would have allowed the
plaintiffs to maintain their job without having to fight fires, *see Bey*, 999
F.3d at 162.

nonemergency medical transports. 992 F.3d 1265, 1269 (11th Cir. 2021). The ambulance service had a policy under which paramedics engaged in emergency transports were required to be mostly clean shaven. *Id.* The plaintiff, a paramedic and Rastafarian who maintained a beard for religious reasons, informed the ambulance service that he could not shave because of his religion. *See id.* at 1269–70. In response, the ambulance service offered the plaintiff a reasonable accommodation: "the opportunity to maintain his beard and to work on the non-emergency-transport side of its operations, for which [the] facial-hair policy did not apply." *Id.* at 1276. Under that accommodation, the plaintiff's "salary, hours, and job description would have remained the same as if he had worked either exclusively on the emergency side or on both the emergency and non-emergency sides of [the] operations." *Id.*

Unfortunately, and in contrast to the employers in *Bailey* and *Bey*, some employers still refuse to provide beard accommodations. But when that happens, courts carefully scrutinize the employer's claim that accommodating a beard would pose an undue hardship. For example, in *Hebrew*, a correctional facility terminated an officer who

maintained a beard for religious reasons. 80 F.4th at 720. Applying *Groff*, the Fifth Circuit rejected the correctional facility's claim of undue hardship because the facility denied the accommodation request "without a thorough examination of 'any and all' alternatives." *Id.* at 722–23. The court further noted that "possible additional work for [the officer's] coworkers is insufficient to show an undue hardship," and that even if safety concerns existed, the facility had not "demonstrat[ed] the 'substantial increased costs' needed to address said concerns." *Id.* at 723, 724 (citation omitted); *see also Sughrim v. New York*, No. 19-cv-7977, 2023 WL 5713191, at *16 (S.D.N.Y. Sept. 5, 2023) (granting summary judgment in favor of plaintiff where correctional facility failed to establish that it would experience undue hardship by allowing plaintiffs to wear one-inch beards at certain posts); *cf. Singh v. Berger*, 56 F.4th 88, 103 (D.C. Cir. 2022) (granting preliminary injunction under the Religious Freedom Restoration Act and ordering Marines to allow Sikh to maintain beard because Marines failed to establish that accommodation of beards "would have any impact on its claimed interests").

Federal agencies have also reinforced this recent trend of holding accountable those employers who refuse to make reasonable beard accommodations. For example, the Civil Rights Division of the Department of Justice recently brought a lawsuit against the California Department of Corrections and Rehabilitation, alleging that its failure to accommodate Sikh and Muslim employees who maintain beards violates Title VII. *See* Press Release, Department of Justice, Justice Department Seeks Court Order to Stop California Department of Corrections from Requiring Correctional Officers to Violate Religious Beliefs (Mar. 25, 2024) (accessible at https://www.justice.gov/opa/pr/justice-department-seeks-court-order-stop-california-department-corrections-requiring). The EEOC has also brought similar enforcement actions in recent months. *See* Press Release, EEOC, Triple Canopy, Inc. to Pay $110,759 to Settle EEOC Religious Discrimination and Retaliation Lawsuit (Dec. 26, 2023) (accessible at https://www.eeoc.gov/newsroom/triple-canopy-inc-pay-110759-settle-eeoc-religious-discrimination-and-retaliation-lawsuit) (EEOC brought suit after government contractor refused to accommodate Christian who maintained beard); Press Release, EEOC,

Blackwell Security Services Will Pay $70,000 to Settle EEOC Religious

Discrimination Lawsuit (Jan. 31, 2024) (accessible at

https://www.eeoc.gov/newsroom/blackwell-security-services-will-pay-

70000-settle-eeoc-religious-discrimination-lawsuit) (EEOC brought suit

after security service refused to accommodate Muslim who maintained

beard).

These recent cases reflect what this Court has described as the

"broad remedial" purpose of Title VII. *Hart v. J. T. Baker Chem. Co.*,

598 F.2d 829, 831 (3d Cir. 1979). As the Supreme Court has explained,

"Title VII does not demand mere neutrality with regard to religious

practices—that they be treated no worse than other practices. Rather,

it gives them *favored treatment.*" *EEOC v. Abercrombie & Fitch Stores,*

*Inc.*, 575 U.S. 768, 775 (2015) (emphasis added).

Unfortunately, as explained next, the ACFD violated that

principle when it imposed, in this case, a blanket prohibition on beards,

including those worn for religious reasons.

**III. Against this recent trend of beard accommodations, the ACFD is taking a different tack in this case and sending a clear message to people who maintain beards for religious reasons and wish to serve their community: you need not apply.**

Bucking the recent trend of beard accommodations, the ACFD in this case is taking a hardline position forbidding all beards, including those worn for religious reasons. The district court approved the ACFD's rigid approach that violates Title VII. *Smith v. City of Atl. City*, No. 16-cv-6865, 2023 WL 8253025, at *8–9 (D.N.J. Nov. 28, 2023); *see also* Appellant's Opening Brief (AOB) at 22–39. The ACFD's approach threatens the rights not only of the plaintiff in this case, but of all employees who wear beards as an expression of their faith.

The district court's order reflects the ACFD's position that it cannot accommodate beards because every member of the department might, at some point, have to don a self-contained breathing apparatus at the scene of a fire. The district court noted that the "reality of the duty of all members of the ACFD" is that they "could be called on" to perform fire suppression duties. *Smith*, 2023 WL 8253025, at *8. As an example, the district court observed that "all ACFD members" were "placed in emergency response roles" during a tropical storm in 2020.

*Id.* at *9.  The district court also emphasized the hypothetical scenario where an air mask technician responding to the scene of a fire is forced to don a self-contained breathing apparatus because of wind or other hazardous conditions.[3]  *Id.*  Thus, the ACFD's position in this case is that donning a self-contained breathing apparatus is "an essential duty" of the ACFD's members.  *Id.* at *8.

In other words, in this case, the ACFD is taking the position that it cannot accommodate employees who, for medical or religious reasons,

---

[3]  Of course, in his 8 years as an air mask technician, Smith has never had to don a self-contained breathing apparatus at the scene of a fire, no matter how hazardous the scene was.  AOB at 32.  And though an Air Shop custodian engaged in fire suppression once in 2020, the prior air mask technician testified that, dating back to at least 1987, an air mask technician had never donned a self-contained breathing apparatus or engaged in fire suppression.  AOB at 14, 61.

The district court placed little weight on the rarity (or hypothetical nature) of these events, *see Smith*, 2023 WL 8253025, at *8, but that ignores *Groff*'s directive that whether an accommodation poses an undue hardship is a "fact-specific inquiry" that "takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their *practical impact*," 600 U.S. at 468, 470 (emphasis added).  Nor did the district court, like the court in *Hebrew*, 80 F.4th at 723, carefully scrutinize the economic costs of an accommodation, instead focusing on "non-economic cost[s] for the ACFD."  *Smith*, 2023 WL 8253025, at *8.  For these reasons, and for those explained in Smith's brief, the district court's analysis of "undue hardship" does not satisfy *Groff*'s rigorous requirements.  AOB at 27–39.

must maintain a beard.  That is confirmed by the only accommodation the ACFD considered here.  Unlike the FDNY in *Bey* and the ambulance service in *Bailey*, the ACFD did not consider exempting Smith from ad hoc emergency response roles or otherwise permitting Smith to work in a light duty (or similar) role in which he would "not fight fires" but would "keep the same title, salary, and benefits that [he] had on full duty."[4]  *Bey*, 999 F.3d at 162 n.3; *see also Bailey*, 992 F.3d at 1276 (offering accommodation in which paramedic who could not shave for religious reasons would work only on nonemergency transports but his "salary, hours, and job description would have remained the same").  Instead, the ACFD did nothing more than investigate whether a mask exists that can be safely worn with facial hair.  *See Smith*, 2023 WL 8253025, at *8.  The position that the ACFD is taking in this case is inflexible: regardless whether your role requires you to fight fires, and regardless of how frequently you fight fires, you cannot maintain facial hair because of safety concerns.

---

[4]  As Smith explains in his opening brief, his current role as an air mask technician does *not* require him to fight fires, AOB at 31–35, and therefore it is akin to the FDNY's light duty role.

Of course, Title VII does not demand an unsafe workplace. But, under *Groff*, safety concerns constitute "undue hardship" only if addressing those concerns would impose "substantial increased costs." 600 U.S. at 470; *see also Hebrew*, 80 F.4th at 724 ("Even if such safety concerns did exist, TDCJ would still bear the burden of demonstrating the 'substantial increased costs' needed to address said concerns." (quoting *Groff*, 600 U.S. at 470)). As Smith explains, the ACFD failed to establish that it would incur a substantial increase in costs if it exempted Smith from ad hoc emergency response roles or otherwise permitted Smith to work in a light duty (or similar) role in which he would not fight fires. AOB at 28–31. And in any event, *Bey* and *Bailey* demonstrate that safety and accommodation of religious beliefs are not mutually exclusive. To the contrary, absent a compelling case of "undue hardship," religious beliefs can—and must—be given "favored treatment." *Abercrombie & Fitch*, 575 U.S. at 775.

The ACFD's position in this case ignores that possibility and sends a clear message to applicants who maintain beards for religious reasons: you need not apply. By shutting the fire station door to Sikhs, Muslims, and other adherents of minority faiths who maintain beards

and wish to serve their community, the ACFD harkens back to an era when employers regularly denied reasonable accommodations of religious beards. *See supra* Section I.

The ACFD's position in this case is therefore at odds with policy, practice, and tradition. It is at odds with the purpose of Title VII: to create an economy in which workers need not sacrifice their faith to make a living. It is at odds with the approach taken recently by other employers in the emergency services industry facing similar requests for beard accommodations. *See supra* Section II. And it is at odds with this nation's tradition of religious freedom, because "a society that truly values religious pluralism cannot compel adherents of minority religions to make the cruel choice of surrendering their religion or their job." *Hardison*, 432 U.S. at 87 (Marshall, J., dissenting) (dissent cited favorably in *Groff*, 600 U.S. at 457–64).

# CONCLUSION

For the foregoing reasons, this Court should reverse and remand.


April 10, 2024   By:     <u>s/ Jasjaap S. Sidhu</u>
             Jasjaap S. Sidhu

HORVITZ & LEVY LLP

SCOTT P. DIXLER (CA State Bar No. 298800)
JASJAAP S. SIDHU (CA State Bar No. 335862)
3601 West Olive Avenue, 8th Floor
Burbank, California  91505-4681
(818) 995-0800

JEREMY B. ROSEN (CA State Bar. No. 192473)
505 Sansome Street, Suite 1550
San Francisco, California  94111-3149
(415) 462-5600

Attorneys for Amici Curiae
**THE SIKH COALITION and ISLAM AND
RELIGIOUS FREEDOM ACTION TEAM**

# CERTIFICATIONS

1.     This brief complies with this Court's Rule 28.3(d) because I am a member of the Third Circuit bar, admitted on March 28, 2024.

2.     This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), it contains 3,901 words.

3.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word version 2302 in 14 point Century Schoolbook font.

4.     This brief complies with this Court's Rule 31.1(c) because: (1) the text of the electronic brief is identical to the text in the paper document, and (2) a virus detection program was run on the electronic brief, and no virus was detected.  The brief was scanned with SentinelOne Endpoint Protection, version 23.3.3.264.

Dated:  April 10, 2024

_____ s/ Jasjaap S. Sidhu _____<br>
Jasjaap S. Sidhu

**CERTIFICATE OF SERVICE**

I hereby certify that on April 10, 2024, I caused the foregoing to be electronically filed with the Clerk of Court using CM/ECF System, which will send notice of such filing to all registered users. Counsel for Amici Curiae is registered to use Third Circuit CM/ECF and receive service by the Notice of Docket Activity.

Dated: April 10, 2024

_____s/ Jasjaap S. Sidhu_____
Jasjaap S. Sidhu
