# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 ℭ𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

*for the*

# ℭ𝔥𝔦𝔯𝔡 ℭ𝔦𝔯𝔠𝔲𝔦𝔱

Case No. 23-3265

ALEXANDER SMITH,

*Plaintiff-Appellant,*

– v. –

CITY OF ATLANTIC CITY, SCOTT EVANS, as Chief of the Atlantic City Fire Department; THOMAS J. CULLENY JR., as Deputy Chief of the Atlantic City Fire Department,

*Defendants-Appellees.*

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY IN CASE NO. 1:19-CV-6865, HONORABLE CHRISTINE P. O'HEARN, U.S. DISTRICT JUDGE

## BRIEF ON BEHALF OF DEFENDANTS-APPELLEES, CITY OF ATLANTIC CITY, SCOTT EVANS, AND THOMAS J. CULLENY JR.

NICHOLAS DELGAUDIO, ESQ.
CLEARY GIACOBBE ALFIERI JACOBS, LLC
955 State Route 34, Suite 200
Matawan, New Jersey 07747
(732) 583-7474
ndelgaudio@cgajlaw.com
*Attorneys for Defendants-Appellees*

## *CORPORATE DISCLOSURE STATEMENT*

In accordance with Rule 26.1 of the Federal Rules of Appellate Procedure, Defendant/Appellee, City of Atlantic City, certifies that such disclosure is not required as it is not a non-governmental corporation but is a public entity.

## *TABLE OF CONTENTS*

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF CONTENTS............................................................................................ ii

TABLE OF AUTHORITIES .................................................................................... iii

STATEMENT OF THE ISSUES ON APPEAL ......................................................1

STATEMENT OF THE CASE..................................................................................1

SUMMARY OF THE ARGUMENT ......................................................................11

LEGAL ARGUMENT...............................................................................................12

   POINT I

   THE DISTRICT COURT DID NOT ERR IN GRANTING SUMMARY
   JUDGMENT IN FAVOR OF THE DEFENDANTS AS TO PLAINTIFF'S
   FREE EXERCISE CLAIM.................................................................................12

   POINT II

   THE DISTRICT COURT DID NOT ERR IN GRANTING SUMMARY
   JUDGMENT IN FAVOR OF THE DEFENDANTS AS TO PLAINTIFF'S
   EQUAL PROTECTION CLAIM .......................................................................20

   POINT III

   THE DISTRICT COURT DID NOT ERR IN GRANTING SUMMARY
   JUDGMENT IN FAVOR OF THE DEFENDANTS AS TO PLAINTIFF'S
   TITLE VII CLAIMS............................................................................................24

   POINT IV

   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN
   DECLINING TO AWARD INJUNCTIVE RELIEF ..........................................42

CONCLUSION ..........................................................................................................44

## *TABLE OF AUTHORITIES*

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)...........................................25

*Andreoli v. Gates*, 482 F.3d 641 (3d Cir. 2007) ......................................................42

*Armour v. County of Beaver, Pa*, 271 F.3d. 417 (3d. Cir. 2001)............................12

*Aron v. Quest Diagnostics Inc.*, 174 F. App'x 82 (3d Cir. 2006) ...........................37

*Ballas v. Tedesco*, 41 F. Supp. 2d 531 (D.N.J. 1999)..............................................43

*Baltgalvis v. Newport News Shipbuilding, Inc.*, 15 F. App'x 172 (4th Cir. 2001) ..27

*Bey v. City of New York*, 999 F.3d 157 (2d Cir. 2021) ............................................17

*Bhatia v. Chevron U.S.A. Inc.,* 734 F.2d 1382 (9th Cir.1984)................... 27, 34, 36

*Blair v. Scott Specialty Gases*, 283 F.3d 595 (3d Cir. 2002) ..................................40

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......................................... 13, 20, 24

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993) ........15

*Davila v. City of Camden*, 66 F. Supp. 3d 529 (D.N.J. 2014) ................................40

*Dique v. N.J. State Police*, 603 F.3d 181 (3d Cir. 2010) ........................................21

*E.E.O.C. v. GEO Grp., Inc.,* 616 F.3d 265 (3d Cir. 2010) ............................... 27, 35

*Employment Division v. Smith*, 494 U.S. 872 (1990) ...................................... 13, 14

*Farrell v. Planters Lifesavers Co.*, 206 F.3d 280 (3d Cir. 2000) ...........................41

*Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359 (3d Cir. 1999) .................................................................................. 14, 15, 18, 19

*Free Speech Coalition, Inc. v. Attorney General United States*, 974 F.3d 408 (3d Cir. 2020) ......................................................................................................42

*Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021)...........................................14

*Gorum v. Sessoms*, 561 F.3d 179 (3d Cir. 2009) ....................................... 12, 20, 24

*Groff v. DeJoy,* 600 U.S. 447 (2023) ......................................................................26

*Hamilton v. City of New York*, 563 F. Supp. 3d 42 (E.D.N.Y. 2021)......... 17, 18, 19

*Hassan v. City of New York*, 804 F.3d 277 (3d Cir. 2015) .............................. 21, 22

*Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) ...................................22

*Jewish Home of E. Pa. v. Ctrs. For Medicare & Medicaid Servs.*, 469 F. App'x 99, 103 (3d Cir. 2012).................................................................................................21

*Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53 (3d Cir. 1992) ....................... 13, 20, 24

*Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156 (3d Cir. 2009) .............40

*Krouse v. Am. Sterilizer Co.*, 126 F.3d 494 (3d Cir. 1997) ....................................38

*LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217 (3d Cir. 2007)..........41

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990) ....................................................................................................... 12, 20, 24

*Maldonado v. Houstoun*, 157 F.3d 179 (3d Cir. 1998)...........................................43

*Miller v. Port Auth. of New York & New Jersey*, 351 F. Supp. 3d 762 (D.N.J. 2018), aff'd, 788 F. App'x 886 (3d Cir. 2019) ......................................................36

*Moore v. City of Phila.*, 461 F.3d 331 (3d Cir. 2006) ...........................................38

*Newton–Haskoor v. Coface N. Am.,* No. 11-3931, 2012 WL 1813102, at *5 (D.N.J. 2012) .................................................................................................................41

*Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187 (3d Cir. 1990) ..43

*Protos v. Volkswagen of Am., Inc.*, 797 F.2d 129 (3d Cir. 1986).................... 25, 26

*Rogers v. Alternative Res. Corp.*, 440 F. Supp. 2d 366 (D.N.J. 2006)...................41

*Seaworth v. Pearson*, 203 F.3d 1056 (8th Cir. 2000).............................................27

*Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144 (3d Cir. 2002) .......16

*Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1997) .................................26

*United States v. Board of Educ.,* 911 F.2d 882 (3rd Cir.1990) ...............................27

*United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454 (1995)............... 15, 19

*Valdes v. New Jersey*, No. 05-3510, 2007 WL 1657354, at *6–7 (D.N.J. June 6, 2007) .................................................................................................................18

*Wayte v. United States,* 470 U.S. 598 (1985) .........................................................22

*Webb v. City of Philadelphia*, 562 F.3d 256 (3d Cir. 2009)...................................27

*Weber v. Leaseway Dedicated Logistics, Inc.*, 166 F.3d 1223 (10th Cir. 1999).....27

*Young v. Hobart West Grp.*, 897 A.2d 1063 (App. Div. 2005) ...............................42

**Statutes**

42 *U.S.C.* §§ 2000e-2(a)(1),7 2000e(j)8 ................................................................25

**Regulations**

*N.J.A.C.* 12:100–10.10 ..........................................................................................17

**Constitutional Provisions**

*U.S. Const.* amend. I ............................................................................................13

*U.S. Const.* amend. XIV, § 1.................................................................................21

**Other Authorities**

29 § *C.F.R.* 1910.134 ............................................................................................17

29 *C.F.R.* § 1910.134(d) and (g)...........................................................................17

29 *C.F.R.* § 1910.134(g) ........................................................................................17

### *STATEMENT OF THE ISSUES ON APPEAL*

1. Did the District Court err in granting summary judgment in Defendants' favor on Plaintiff's Title VII accommodation and retaliation claims? *See* JA015-22.

2. Did the District Court err in granting summary judgment in Defendants' favor on Plaintiff's First Amendment free exercise claim? *See* JA007-13.

3. Did the District Court err in granting summary judgment in Defendants' favor on Plaintiff's equal protection claim? *See* JA013-15.

4. Did the District Court abuse its discretion in denying Plaintiff's request for a preliminary injunction? *See* JA024-43.

### *STATEMENT OF THE CASE*

Plaintiff Alexander Smith, a Christian male, is a firefighter for the City of Atlantic City and brings this lawsuit against the City, Fire Chief Scott Evans and Deputy Chief Thomas J. Culleny Jr. ("Defendants"), alleging that Defendants engaged in discriminatory and unconstitutional treatment against him on the basis of his religion by not granting him a religious accommodation allowing him to wear a three-inch beard as an expression of his religious beliefs, an accommodation which would not only be a safety hazard – which Plaintiff has conceded – but an accommodation which would run afoul of binding state and federal regulations, a crucial fact which Plaintiff's appellate brief fails to mention. Following discovery, Defendants filed a summary judgment motion in the District Court of New Jersey,

1

which was granted by District Judge Christine P. O'Hearn, dismissing all of Plaintiff's claims with prejudice. JA002-023.

Plaintiff has been a City firefighter since 2004. JA069 (New Hire Form). In November 2015, Plaintiff was assigned to the Fire Department's Fire Shop to perform Air Mask Technician duties. JA410 (Smith Transcript 125:14-125:24). When Plaintiff was assigned to the Air Mask Technician duties in the Atlantic City Fire Department ("ACFD"), he still maintained the position of Firefighter, remained enrolled in the State of New Jersey Police and Firefighters' Retirement System and remained governed by the collective bargaining agreement ("CBA") between the City of Atlantic City and the Atlantic City Professional Fire Fighters IAFF Local 198 union. JA164 (Personnel Action Form); JA385 (Org. Chart); JA403-404 (Smith Transcript. 69:20-70:6); JA407 (87:19-89:25); JA079 (CBA).

As an Air Mask Technician, Plaintiff administers and oversees the self-contained breathing apparatuses ("SCBAs") for the Department. JA225. ACFD personnel wear an SCBA air mask when engaging in activities necessitating the use of an air mask, which includes but is not limited to fire suppression and search and rescue activities. JA073-074 (Respiratory Protective Program); JA401 (Smith Transcript 25:2-25:5). The Air Mask Technician also conducts yearly SCBA fit and flow tests, repairs SCBAs, and reports to the scene of fires, primarily to man the Air Unit and refill air bottles. JA402 (Smith Transcript 39:6-39:12); JA653. The

2

ACFD's Respiratory Protective Program provides in relevant part that "all personnel responding to any type of fire or any other emergency incident" must follow the "standardized use of [an] SCBA" when exposed to hazardous air. JA073-074.

The ACFD does not have a policy or practice of exempting those assigned as Air Mask Technicians from being able to wear the SCBA air mask and assuming roles in fire suppression, search and rescue or any other activity in which an SCBA may be required; all firefighters in the Department, including those assigned to be Air Mask Technicians, are required to be fit-tested with the Department's SCBA tight-fitting air mask to ensure they can wear the mask with a proper seal and be ready to assume a role in fire suppression and/or search and rescue at any time. JA073-074 (Respiratory Protective Program); JA334 (TRO Transcript 44:11-44:16); JA505-507 (Culleny 30(b)(6) Transcript 110:16-112:2). In other words, the ACFD does not have any permanent light duty firefighter positions that are not required to respond to fires and be ready to assume a role in fire suppression and/or search and rescue. JA503-504, 508-509 (Culleny 30(b)(6) Transcript 98:13-99:5, 122:9-123:2); JA359 (TRO Transcript 69:14-69:17).

Plaintiff's own expert acknowledged the potential for someone on the Air Unit to enter into an atmosphere that would necessitate the need for an SCBA, which was also confirmed by Atlantic City Fire Chief Scott Evans. JA571-572 (Krause Transcript 88:21-89:24); JA346-347, 349 (TRO Transcript 56:19-57:9 59:15-59:25).

3

As the number of firefighters in the ACFD has decreased substantially in recent years, the probability of the Air Mask Technician being required to enter the "immediately dangerous to life or health" ("IDLH") environment and wear the air mask is even higher than it was in the past. The Atlantic City Fire Department employed 274 firefighters in April 2009; by January 2019, the time of Plaintiff's accommodation request, the Department employed 189 firefighters. JA166-172 (ACFD Roster 2009 and 2019).

Similarly, due to a lack of available firefighters and/or due to an overwhelming amount of fire calls, a firefighter who is usually assigned to be the Air Mask Technician may be needed in an emergency to respond to a fire call and engage in fire suppression activities, if necessary. In fact, such a situation did arise in August 2020. On August 4, 2020, all firefighters including administrative and prevention personnel, and including Plaintiff, were called in for emergency response purposes, including to put the reserve apparatus in service due to the overwhelming call volume caused by a tropical storm; however, Plaintiff refused to report. JA389-390 (Memorandum from Culleny to Evans Re: Tropical Storm); JA405-406 (Smith Transcript 82:20-83:17). Plaintiff does not dispute that an Air Shop custodian engaged in fire suppression after being ordered to do so. JA631-632 (Responsive Statement of Material Facts ¶ 15).

4

Plaintiff's own expert Robert Krause also acknowledged that situations such as these could arise and it is reasonable for the Department to have those in the fire shop put a reserve apparatus in service; Krause also agreed that Plaintiff not being able to wear an air mask due to his beard could be a hardship and stress the Department. JA567-568 (Krause Transcript 72:6-73:21). Plaintiff's expert Robert Krause also acknowledged there is no guarantee that where Plaintiff is stationed will remain out of the smoke and IDLH area, due to constant changes in conditions, such as wind direction, and that it is important for fire departments to be as prepared as possible for sudden changes that put firefighters at risk and to have plans in place for these scenarios. JA563-566 (Krause Transcript 60:21-61:11, 69:16-70:12).

Even if he is stationed outside of the IDLH atmosphere, Plaintiff can be ordered at any time by a superior on the fireground or in another emergency to perform operations that would require him to use an SCBA, be it for rescue, fire suppression or standby. Plaintiff's own expert Robert Krause acknowledged that the Fire Department has the authority to determine what the mission of Plaintiff in the Air Mask Technician's role is and to order him into fire suppression duties if needed at the scene of a fire. JA569-570 (Krause Transcript 78:5-78:23; 82:10-82:18). Other scenarios exist in which Plaintiff might be needed or tasked with engaging in activities that may necessitate the use of an SCBA air mask, including in the case of a building collapse or where there were other individuals that he could be teamed up

5

with for rescue or suppression purposes. JA571-572 (Krause Transcript 88:21-89:24).

To ensure the proper fit of SCBA's, ACFD members, by way of the Department's Operational Guidelines on Grooming Standards, are prohibited from growing facial hair that inhibits or interferes with the seal of an SCBA's face piece. Members of the Department are required to be clean shaven while on duty, and beards and goatees of any type are specifically prohibited. The Grooming Standards, in accordance with binding state and federal regulations, provide that "In no case shall facial hair, including stubble, inhibit the seal of the air mask's face piece. Facial hair of any type shall not interfere with the seal of SCBA face piece." JA072 (Grooming Standards, ¶ 5-6).

The Department does not permit any individualized exemptions to allow Department employees to wear a beard for any reason, religious or otherwise, as admitted by Plaintiff. JA408 (Smith Transcript 117:3-117:6); JA331 (TRO Transcript 41:3-41:8). As explained by Chief Scott Evans and Deputy Chief Culleny, the exception found in paragraph 5 of the Grooming Standards for emergency call-back is an emergency situational exception to the requirement of being clean shaven and does not permit a member to wear an SCBA air mask with facial hair as the highest-ranking officer at the scene of a fire would deem those on emergency call-back who had facial hair ineligible to wear an SCBA. JA460

6

(Culleny Transcript 123:9-123:24); JA330-331 (TRO Transcript 40:6-41:2).  This emergency exception temporarily waives the shaving requirement (but not the requirement as it pertains to wearing an SCBA air mask) for emergency call backs for all ACFD members, including Plaintiff, which would allow a member called in while not on duty to report more quickly without shaving first in the event of an emergency and does not differentiate between secular and religious motivations. Id.

A request for a shaving exemption was made by another firefighter for non-religious, medical reasons.  This request was denied. JA194-195 (Request and Correspondence Re: Medical Accommodation).  No shaving exemptions have been granted to an ACFD member. JA408 (Smith Transcript 117:3-117:6); JA331 (TRO Transcript 41:3-41:8).

In 2019, Plaintiff made a request for an exemption to the Fire Department's Grooming Policy to allow him to wear a beard, which was denied by the City because of safety concerns and binding state and federal regulations which prohibit the wearing of an air mask by firefighters with facial hair that comes between the sealing surface of the facepiece and the face. JA173-174 (Accommodation Request); JA210 (Denial of Request).  Glaringly, Smith's appellate brief in this matter does not even make mention of the binding state and federal regulations which serve as a primary basis for the denial by the City and for the summary judgment decision by District Judge O'Hearn.

The City applies their Grooming Policy to all firefighters with no individual exemptions permitted – religious, medical, or otherwise. The City has also not hesitated to grant religious accommodations when possible, granting a separate request made by Plaintiff for an alternative means of signing in and signing out of work that did not involve him having to use the City's hand-scan system, and assigning Plaintiff the Air Mask Technician duties in 2015 to better accommodate his conducting of religious services. JA384 (Hand-Scan Accommodation Request); JA411 (Smith Transcript, 149:12-149:21); JA469-470 (Culleny Transcript, 246:22-247:21).

The request was forwarded to and evaluated by the City's Solicitor's Office and Human Resources Department; the request was discussed and evaluated by the legal team (the Solicitor's Office), Human Resources, the Business Administrator and the Fire Department. JA453-454, 461-466 (Culleny Transcript 92:23-94:16; 154:10-159:2); JA520-526, 531 (Waiters Transcript, 22:20-26:13; 43:18-44:3; 54:8-22). Deputy Chief Culleny requested that Plaintiff submit further documentation in support of his request while his request was being evaluated; Plaintiff also had conversations with the Human Resources Director, Alexis Waiters. JA189 (Letter from Culleny to Smith); JA518-523, 527-530 (Waiters Transcript 20:18-22:18; 24:15-25:10; 48:21-51:4). Before denying Plaintiff's request to wear a beard, the City explored whether there were any exemptions permitted to the state regulations

which would allow a firefighter with a beard to wear an air mask by contacting the agency responsible for the adoption and implementation of the regulations, New Jersey State Department of Health's Public Employees Occupational Safety and Health ("PEOSH"), and the agency confirmed that there were no such exemptions allowed. JA190 (Email from PEOSH to Thomas Culleny). PEOSH explained the rationale behind the regulations, including mentioning that "Preventing these unnecessary risks is a compelling governmental interest that justifies OSHA's decision not to provide a religious exemption from the respirator standard, especially as there is no less restrictive way to provide this protection." Id. Plaintiff's own expert, Robert Krause, testified and agreed that air mask leaks caused by facial hair would shorten the duration of the air tank life, which can increase the risks to firefighters. JA559-562 (Krause Transcript 28:22-29:3; 30:22-31:3).

The City also contacted its air mask vendor and a separate air mask vendor to inquire as to whether there was an alternative air mask for firefighters that allows for the wearing of a beard in a safe manner, but found that there were no such masks available. JA450-452, 456-459 (Culleny Transcript 17:18-19:15, 109:16-112:12).

The City denied Plaintiff's accommodation request to wear and maintain a beard as an expression of his religious faith. JA210.

Contrary to what is now being raised in the Plaintiff's appellate brief, aside from the denial of Plaintiff's request to wear a beard, Plaintiff did not allege that the

Defendants have retaliated against him in any other way, admitting as such during

his deposition:

> Q:  ...In what way have the defendants retaliated against you for
> exercising your right to practice your religion?
> A. By denying my request.
> Q. Are there any other ways in which they have retaliated
> against you?
> A. Just the request's denial.

JA412-413 (Smith Transcript 151:11-151:17, 212:5-212:17).

On February 25, 2019, Plaintiff filed a Complaint and Order to Show Cause

against Defendants City of Atlantic City, Chief Scott Evans and Deputy Chief

Thomas J. Culleny Jr. JA21-224. On March 22, 2019, Plaintiff's motion for a

temporary restraining order and preliminary injunction seeking to enjoin the City

from disciplining Plaintiff for violating the Atlantic City Fire Department's

Grooming Policy was denied by District Judge Robert B. Kugler because Plaintiff

was not likely to succeed on the merits of any of his claims. JA024-044.  Plaintiff

filed an appeal of the preliminary injunction decision to the Third Circuit, Docket

No. 19-1665, but then voluntarily dismissed the appeal with prejudice.  Following

discovery, on November 28, 2023, District Judge Christine P. O'Hearn granted

Defendants' motion for summary judgment, dismissing all of Plaintiff's claims.

JA002-023.

## *SUMMARY OF THE ARGUMENT*

The District Court's decision dismissing the Plaintiffs' claims should be affirmed in its entirety.

Plaintiff's Equal Protection claims fail because Plaintiff was not treated differently than anyone else in the Fire Department with respect to wearing a beard, and has provided no evidence to the contrary. Plaintiff's Free Exercise claims fail because the Department's Grooming Policy is rationally related to the legitimate government objectives of both safety and following binding state and federal regulations, the government's interest in safety and in following binding State and federal regulations is compelling, and these interests are directly related to the Grooming Policy's prohibition on any firefighter wearing a beard.

Plaintiff's claims for failure to grant his request for a religious accommodation and for retaliation both fail as granting Plaintiff's request would result in an undue hardship to the City because: 1) the accommodation is prohibited by binding regulations; and 2) the accommodation would cause safety issues, as admitted to by both Plaintiff and Plaintiff's own expert. Plaintiff's expert also acknowledged that Plaintiff not being able to wear an air mask due to his beard could be a hardship and stress the Department, and that situations could arise necessitating the Department to have those in the fire shop put a reserve apparatus in service, which would require the use of an SCBA. Glaringly, Plaintiff's appellate brief fails to even mention the

binding state and federal regulations which serve as a primary basis for the denial of Smith's accommodation request by the City and for the summary judgment decision by District Judge O'Hearn.

For the foregoing reasons, as further detailed below, the District Court's dismissal of all of Plaintiffs' claims should be affirmed.

## *LEGAL ARGUMENT*

### POINT I
### THE DISTRICT COURT DID NOT ERR IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANTS AS TO PLAINTIFF'S FREE EXERCISE CLAIM

#### <u>Scope and Standard of Review</u>

Where the First Amendment is involved, the Third Circuit will undertake exacting review of the whole record with a particularly close focus on facts that are determinative of a constitutional right. *Armour v. County of Beaver, Pa*, 271 F.3d. 417, 420 (3d. Cir. 2001). Thus, review of a district court's grant or denial of summary judgment on a First Amendment claim is *de novo*, such that, the Third Circuit may affirm on any basis supported by the record. *Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir. 2009).

It also bears noting that unsupported allegations, subjective beliefs, or argument alone, cannot preclude a grant of summary judgment on a claim for violation of one's constitutional rights. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L.Ed.2d 695 (1990) (nonmoving party may not

successfully oppose summary judgment motion by simply replacing "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."). Thus, if the nonmoving party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

<u>*Argument*</u>

The District Court correctly determined that summary judgment in favor of the Defendants was appropriate on Plaintiff's Free Exercise Clause claim. The Free Exercise Clause of the First Amendment provides that "Congress shall make no law...prohibiting the free exercise [of religion]." <u>U.S. Const.</u> amend. I. However, free exercise does not exempt religious adherents from neutral laws of general applicability, even if such laws incidentally impose substantial burdens on the practice of religion. *Employment Division v. Smith*, 494 U.S. 872, 879 (1990).

Typically, a challenged law or government action will be reviewed under either a rational basis standard, intermediate scrutiny standard or strict scrutiny standard, turning on whether the policy or practice is "neutral" and "generally

13

applicable." See *Emp't Div. v. Smith*, 494 U.S. 872 (1990) (applying rational basis review to neutral and generally applicable laws that only incidentally burden religious exercise). "Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021). Neutrality toward religion prohibits government from "deciding that secular motivations are more important than religious motivations." *Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359, 365 (3d Cir. 1999). A law is considered "not generally applicable" if it has a system of individualized and discretionary exemptions that allow the government to consider, and grant an exemption based on, a person's particular reasons and circumstances for deviating from the law. *Id.*

Thus, the level of scrutiny to be applied turns on whether the ACFD's Grooming Policy is "neutral" and "generally applicable." If the policy is considered both neutral and generally applicable with respect to religion, rational basis review is permitted, even if it has the incidental effect of burdening Plaintiff's religious belief or practice. Under rational basis review, a facially neutral law need only be rationally related to a legitimate government objective. A governmental law that is facially neutral and not generally applicable, can only reach intermediate scrutiny and not strict scrutiny. *Fraternal Order of Police Newark Lodge No. 12 v. City of*

14

*Newark*, 170 F.3d 359 (3d Cir. 1999).  Under intermediate scrutiny, the Grooming Policy must be substantially related to promoting an important government interest. *See United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 465 (1995).

Plaintiff's arguments for strict scrutiny must fail; in the Third Circuit, the Court can only subject the grooming policy to strict scrutiny if the policy lacks facial neutrality. *See Fraternal Ord.*, 170 F.3d at 366.  The Grooming Policy makes no reference to religion or religious beliefs and is therefore neutral on its face. *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533-34 (1993).  The Policy is also enforced on a religion-neutral basis, as fellow requests for medical, non-religious exemptions have been denied and the Plaintiff has presented no evidence that the policy is enforced inconsistently or in any way other than on a religion-neutral basis. The Grooming Policy does not target religious conduct and is motivated by safety and the following of binding regulations.

Here, the District Court correctly determined that ACFD's Grooming Policy is both facially neutral and generally applicable because it imposes the same limitations on every comparable firefighter, and does not provide for any categorical exemptions to the no-beard rule.  The Grooming Policy provides in relevant part:

> 6.    Beards and goatees of any type are specifically prohibited. In no case shall facial hair, including stubble, inhibit the seal of the air mask's face piece.  Facial hair of any type shall not interfere with the seal of SCBA face piece.  No hair is permitted below the lower lip.

JA072 (Grooming Standards). The ACFD does not allow any individualized categorical exemptions to allow Department employees to wear a beard for any reasons, religious or otherwise. JA408 (Smith Transcript 117:3-117:6); JA331 (TRO Transcript 41:3-41:8). In fact, a similar request for a shaving exemption made by a firefighter for a non-religious, medical reason was also denied. JA194-195 (Request and Denial). Because the policy is both facially neutral and generally applicable, the rational basis test would apply.

Under rational basis review, a facially neutral law need only be rationally related to a legitimate government objective. *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 165 (3d Cir. 2002). Here, the City has a legitimate government objective in its firefighters not wearing beards for at least two reasons: (1) for safety reasons: as even Plaintiff and his expert have admitted, facial hair creates additional safety risks for firefighters by creating leaks in the seal of the tight-fitting respirator mask, leading to a reduction in air tank time, which is a danger for firefighters, JA559-562 (Krause Transcript 28:22-29:3; 30:22-31:3); and (2) in order to follow binding State and federal regulations – the ACFD cannot permit its firefighters to have beards because they are prohibited by these binding regulations from wearing an air mask if any facial hair would come between the sealing surface of the mask and the wearer's face.

16

The Grooming Standards are set in accordance with state and federal regulations which require that the ACFD not permit respirators with tight-fitting facepieces be worn by employees who have facial hair that comes between the sealing surface of the facepiece and the face. The New Jersey Department of Health's Public Employees Occupational Safety and Health ("PEOSH") regulations incorporate by reference the federal Occupational Safety and Health Administration ("OSHA") regulations pertaining to respirators found at 29 § *C.F.R.* 1910.134. *See N.J.A.C.* 12:100–10.10.  These regulations provide the following:

> (i) The employer shall not permit respirators with tight-fitting facepieces to be worn by employees who have:
> (A) Facial hair that comes between the sealing surface of the facepiece and the face...;

29 *C.F.R.* § 1910.134(g).  The Grooming Policy itself mentions the possibility of facial hair interfering with such seal ("[f]acial hair of any type shall not interfere with the seal of SCBA face piece"). JA072.  Such respirators are required to be worn whenever a firefighter is entering an "immediately dangerous to life or health" ("IDLH") atmosphere. 29 *C.F.R.* § 1910.134(d) and (g). The Plaintiff glaringly omits any discussion of these binding regulations from his appeal brief.

It was on these grounds that a similar case filed in New York City involving the Fire Department of New York was dismissed by the Court of Appeals for the Second Circuit. *See Bey v. City of New York*, 999 F.3d 157 (2d Cir. 2021); *see also Hamilton v. City of New York*, 563 F. Supp. 3d 42 (E.D.N.Y. 2021).

17

Courts have long found that safety is a compelling, legitimate governmental interest. *See Fraternal Order of Police, 170 F.3d at 366* ("safety is undoubtedly an interest of the greatest importance"). Similarly, a fire department's ability to comply with binding state and federal regulations is certainly a legitimate government objective. *See e.g., Hamilton v. City of New York*, 563 F. Supp. 3d 42, 60 (E.D.N.Y. 2021).

The ACFD's Grooming Standards are rationally related to these objectives. Most clearly, the policy ensures that the department complies with the regulations prohibiting SCBAs to be worn by those with facial hair. In addition, and as found by the District Court, these is no dispute that PEOSH and OSHA find that an ill-fitting SCBA creates a safety risk to the firefighter wearing the mask, as well as to the fellow firefighters who may be tasked with rescuing those with an ill-fitted mask. The text of the Grooming Standards contemplates these concerns, providing that "[f]acial hair of any type shall not interfere with the seal of SCBA face piece." JA072. Therefore, the grooming policy prohibiting facial hair is rationally related to the government's legitimate objective of firefighter safety. *See Valdes v. New Jersey*, No. 05-3510, 2007 WL 1657354, at *6–7 (D.N.J. June 6, 2007).

Further, even if the Court were to apply the heightened standard of intermediate scrutiny should it determine that the policy is not generally applicable – which it is – the ACFD Grooming Policy would survive such review, as found by

18

the District Court below. Under intermediate scrutiny review, the highest level of scrutiny the Court will apply to a governmental entity with a facially neutral law, ACFD must have a compelling interest that is substantially related to the Grooming Policy. *See United States v. Nat'l Treasury Emps. Union,* 513 U.S. 454, 465 (1995). The government's interests in safety and in following binding State and federal regulations are clearly compelling, and these interests are directly related to the Grooming Policy's prohibition on any firefighter wearing a beard that would interfere with the seal of the air mask. *See Fraternal Order of Police*, 170 F.3d at 366 ("safety is undoubtedly an interest of the greatest importance"); *see also Hamilton v. City of New York*, 563 F. Supp. 3d 42 (E.D.N.Y. 2021) (FDNY enforcing its grooming policy to comply with binding regulations is inherently a legitimate interest).

Therefore, the ACFD's Grooming Policy as applied to Plaintiff's desire to wear a beard survives review under both rational basis and intermediate scrutiny standards, Plaintiff's Free Exercise claims under the First Amendment and the New Jersey Constitution must fail, and the District Court's decision dismissing these claims with prejudice should be affirmed.

## POINT II
## THE DISTRICT COURT DID NOT ERR IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANTS AS TO PLAINTIFF'S EQUAL PROTECTION CLAIM

### *Scope and Standard of Review*

A review of the District Court's grant of summary judgment is *de novo*, such that the Third Circuit may affirm on any basis supported by the record. *Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir. 2009).

It also bears noting that unsupported allegations, subjective beliefs, or argument alone, cannot preclude a grant of summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L.Ed.2d 695 (1990) (nonmoving party may not successfully oppose summary judgment motion by simply replacing "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."). Thus, if the nonmoving party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

*Argument*

The District Court correctly determined that summary judgment in favor of the Defendants was appropriate on Plaintiff's Equal Protection claims. The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall...deny to any person within its jurisdiction the equal protection of the laws." *U.S. Const.* amend. XIV, § 1. The Equal Protection inquiry is two-fold: (1) whether the governmental employer "intentionally discriminates against a reasonably identifiable group," and (2) if so, "whether that intentional discrimination is nonetheless legally justified." *Hassan v. City of New York*, 804 F.3d 277, 294 (3d Cir. 2015). To successfully make out an equal protection claim, a plaintiff must be able to demonstrate "(1) that he was treated differently from other similarly situated individuals, and (2) 'that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor, . . . or to prevent the exercise of a fundamental right.'" *Dique v. N.J. State Police*, 603 F.3d 181, 184 n.5 (3d Cir. 2010).

Ultimately, a plaintiff must allege and prove "intentional discrimination," and a plaintiff's "religious affiliation must have been a substantial factor in that different treatment." *Hassan*, 804 F.3d at 294. "[M]ere unequal treatment or adverse effect" is not enough in the absence of "intentional or purposeful discriminatory purpose." *Jewish Home of E. Pa. v. Ctrs. For Medicare & Medicaid Servs.*, 469 F. App'x 99,

103 (3d Cir. 2012). If the challenged policy or action is facially neutral, a plaintiff can prove intentional discrimination if the policy is applied "with a greater degree of severity" against his religion or if it was "designed to impose different burdens" on his religion. *Hassan*, 804 F.3d at 294 (internal quotation marks and citations omitted); *see also See also Wayte v. United States,* 470 U.S. 598, 610 (1985) (a plaintiff must show that the "decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects.")

The factual bases for Plaintiff's "First Amendment and Equal Protection claims are functionally identical." *Hill v. City of Scranton*, 411 F.3d 118, 125–26 (3d Cir. 2005). The "substantive guarantees of the [First] Amendment serve as the strongest protection against the limitation of [religious] rights." *Id*. at 126. Therefore, "[i]f a law passes muster under the First Amendment it is also likely to be upheld under the Equal Protection clause." *Id*.

Here, Plaintiff's Equal Protection claims fail because Plaintiff was not treated differently than anyone else in the Fire Department with respect to wearing a beard, and has provided no evidence to the contrary.  Instead, the opposite is true: Defendants have treated Plaintiff in the exact same manner as all other members of the ACFD.  The Department's Grooming Policy and the Department in practice do not permit *any* Department employee an individualized exemption to wear a beard

for any reason, whether secularly or religiously motivated. JA408 (Smith Transcript 117:3-117:6); JA331 (TRO Transcript 41:3-41:8).  In fact, a similar request for a shaving exemption made by a firefighter for a non-religious, medical reason was also denied. JA194-195 (Request and Denial).  To the extent the Grooming Standards contain an emergency exception temporarily waiving the shaving requirement (but not the requirement as it pertains to wearing an SCBA air mask) for emergency call backs, this exception applies to <u>all</u> ACFD members, including Plaintiff, and does not differentiate between secular and religious motivations. JA460 (Culleny Transcript 123:9-123:24); JA330-331 (TRO Transcript 40:6-41:2).

There has also been no evidence of "intentional or purposeful discriminatory purpose" on the part of Defendants; in fact, Plaintiff was granted a separate religious accommodation request in 2019 to not use the hand scan system to sign in and out of work each day and Plaintiff's switch into performing Air Mask Technician duties in 2015 was by request of Plaintiff to better accommodate his religious services schedule. JA384 (Hand-Scan Accommodation Request); JA411 (Smith Transcript, 149:12-149:21); JA469-470 (Culleny Transcript, 246:22-247:21).

Therefore, because Plaintiff has not been treated differently than members of an unprotected class, Plaintiff's Equal Protection claims must fail, and the District Court's decision dismissing these claims with prejudice should be affirmed.

## POINT III
## THE DISTRICT COURT DID NOT ERR IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANTS AS TO PLAINTIFF'S TITLE VII CLAIMS

### *Scope and Standard of Review*

A review of the District Court's grant of summary judgment is *de novo*, such that the Third Circuit may affirm on any basis supported by the record. *Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir. 2009).

It also bears noting that unsupported allegations, subjective beliefs, or argument alone, cannot preclude a grant of summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L.Ed.2d 695 (1990) (nonmoving party may not successfully oppose summary judgment motion by simply replacing "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.").  Thus, if the nonmoving party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). A genuine issue of material fact exists only if "the evidence is such that a reasonable

jury could find for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## Argument

A.    *Failure to Accommodate Claim*

The District Court correctly determined that summary judgment in favor of the Defendants was appropriate on Plaintiff's Title VII claims.  Count Three of the Complaint alleges violations of Title VII of the Civil Rights Act of 1964 because "Defendants have discriminated against Plaintiff Smith...[by] [f]ailing to provide an adequate religious accommodation that allows the growth of a reasonable length beard; and [r]etaliating against Plaintiff for exercising his right to practice his religion by wearing a moderate length beard."

As to Plaintiff's religious accommodation claim, Title VII prohibits religious discrimination and requires employers to make reasonable accommodations for their employees' religious beliefs and practices, unless doing so would result in "undue hardship" to the employer. 42 *U.S.C.* §§ 2000e-2(a)(1),7 2000e(j)8.  To establish a prima facie case, an employee must show: (1) he holds a sincere religious belief that conflicts with a job requirement; (2) he informed the employer of the belief; and (3) he was disciplined for failing to comply with the conflicting requirement. *Protos v. Volkswagen of Am., Inc.*, 797 F.2d 129, 133–34 (3d Cir. 1986).  If the employee establishes a prima facie case, the burden shifts to the employer to show that it made

25

good faith efforts to accommodate, or that the requested accommodation would cause an undue burden. Id. at 134. An accommodation has been said to cause an undue burden when it results in "more than a de minimis cost" to the employer. *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1997) (holding a cost is more than de minimis if it undercuts an employer's efficiency).

Recently, after the Defendants' summary judgment motion was filed but before Plaintiff filed its opposition to Defendants' summary judgment motion, the Supreme Court issued a decision that Plaintiff now cites at length in his appellate brief, *Groff v. DeJoy,* 600 U.S. 447 (2023), for the proposition that an employer must show not just that an accommodation would be more than de minimis but that it would be a substantial burden on the employer. *Id.* 600 U.S. at 468. Notably, the District Court Judge in the present matter evaluated this new case law and used the *Groff* standard in issuing her Opinion and Order on the summary judgment motion. As the District Court cited, to show that an accommodation in this case would work an undue hardship on the employer, under *Groff,* Defendants must show "that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Groff,* 600 U.S. at 470.

The determination whether a particular accommodation constitutes an undue hardship must be made by considering the particular factual context of each case. *Protos v. Volkswagen of Am., Inc.*, 797 F.2d 129, 134 (3d Cir. 1986). Both

26

economic and non-economic costs can pose an undue hardship upon employers. *Webb v. City of Philadelphia*, 562 F.3d 256, 260 (3d Cir. 2009). Non-economic costs can include, for example, violations of a collective bargaining agreement; the threat of possible criminal sanctions; and safety or security concerns. *Webb v. City of Philadelphia*, 562 F.3d 256, 260 (3d Cir. 2009); *E.E.O.C. v. GEO Grp., Inc.*, 616 F.3d 265 (3d Cir. 2010).

Further, an undue hardship can be found where an accommodation would be contrary to a binding regulation or law. *See United States v. Board of Educ.,* 911 F.2d 882, 891 (3rd Cir.1990) (requiring defendant to violate state statute to accommodate plaintiff resulted in undue hardship); *Seaworth v. Pearson*, 203 F.3d 1056, 1057 (8th Cir. 2000) (no Title VII religious discrimination where not requiring employee to provide social security number would be in violation of federal law); *Bhatia v. Chevron U.S.A. Inc.,* 734 F.2d 1382, 1384 (9th Cir.1984) (company policy promulgated to avoid risk of liability under state safety standards justified requiring employee to shave facial hair despite contrary religious beliefs); *Baltgalvis v. Newport News Shipbuilding, Inc.*, 15 F. App'x 172, 173 (4th Cir. 2001); *Weber v. Leaseway Dedicated Logistics, Inc.*, 166 F.3d 1223 (10th Cir. 1999) ("To require an employer to subject itself to potential fines also results in undue hardship").

Here, Plaintiff, who had been employed by the City as a firefighter since 2004 and was assigned to the Fire Department's Fire Shop to perform Air Mask

Technician duties in November 2015, made a request for an accommodation in January 2019 to allow him to wear a three-inch beard that he had recently grown as an expression of his religious faith.  Upon receiving Plaintiff's accommodation request, it was forwarded and reviewed by the City's Solicitor's Office, Human Resources Department and others, and the City explored whether this could be permitted under applicable state and federal regulations. JA453-454, 461-466 (Culleny Transcript 92:23-94:16; 154:10-159:2); JA520-526, 531 (Waiters Transcript, 22:20-26:13; 43:18-44:3; 54:8-22).  Deputy Chief Culleny requested that Plaintiff submit further documentation in support of his request while his request was being evaluated and Plaintiff also had conversations with the Human Resources Director. JA189 (Letter from Culleny to Smith); JA518-523, 527-530 (Waiters Transcript 20:18-22:18; 24:15-25:10; 48:21-51:4).

Deputy Chief Culleny also contacted New Jersey PEOSH to inquire as to whether there is an exemption from PEOSH regulations for respirator wearers who wish to wear a beard for religious reasons and received an email from PEOSH's Patrick Bost explaining that there are no accommodations that can be made for firefighters that would allow them to wear an SCBA or any tight-fitting respirator with a beard. JA190 (Email from PEOSH to Culleny).

The fact that any such accommodation would be in violation of the binding state and federal regulations is undisputed, and, glaringly, Plaintiff's appellate brief,

while focusing on the safety aspect of wearing a beard with an SCBA, does not even mention the fact that there are binding regulations that would not allow any such accommodation by law; granting such an accommodation in violation of binding regulations would be a clear undue hardship on the Defendants. These regulations thus undercut all of the "alternative accommodations" that Plaintiff raises in his appellate brief, all of which entail him wearing an air mask with some level of facial hair.

The Department also contacted its air mask vendor and a separate air mask vendor to inquire as to whether there was an alternative air mask for firefighters that allows for the wearing of a beard in a safe manner, but found that there were no such masks available. This fact too was not disputed by Plaintiff. JA450-452, 456-459 (Culleny Transcript 17:18-19:15, 109:16-112:12).

Plaintiff's own expert, Robert Krause, testified and agreed that air mask leaks caused by facial hair would shorten the duration of the air tank life, which can increase the risks to firefighters. JA559-562 (Krause Transcript 28:22-29:3; 30:22-31:3).

Plaintiff's failure to accommodate claims fail because granting the request to wear a beard would create an undue hardship. As set forth above, in addition to the safety concerns that allowing Plaintiff to wear a beard would cause, the request itself is prohibited by binding safety regulations. Granting such request and allowing

29

Plaintiff to wear an air mask would be a violation of these binding regulations.  Such an accommodation would essentially make Plaintiff unable to perform the duties of a firefighter, creating additional safety risks for a Department that has seen its staffing levels decrease over the years.

To the extent Plaintiff's arguments center around the requirement that Plaintiff be able to wear an SCBA, the ACFD does not have a policy or practice of exempting those assigned as Air Mask Technicians from being able to wear the SCBA air mask and assuming roles in fire suppression, search and rescue or any other activity in which an SCBA may be required. JA073-074 (Respiratory Protective Program); JA334 (TRO Transcript 44:11-44:16); JA505-507 (Culleny 30(b)(6) Transcript 110:16-112:2).  Though Plaintiff submits that his role as an Air Mask Technician would never require him to wear an SCBA, that contention is disproven by the record of undisputed material fact.  The ACFD's Respiratory Protective Program provides in relevant part that "all personnel responding to any type of fire or any other emergency incident" must follow the "standardized use of [an] SCBA" when exposed to hazardous air. JA073-074 (Respiratory Protective Program).  All firefighters in the Department, including those assigned to be Air Mask Technicians, are required to be fit-tested with the Department's SCBA tight-fitting air mask to ensure they can wear the mask with a proper seal and be ready to assume a role in fire suppression and/or search and rescue at any time. JA073-074

30

(Respiratory Protective Program); JA334 (TRO Transcript 44:11-44:16); JA505-507 (Culleny 30(b)(6) Transcript 110:16-112:2). Plaintiff's bald assertions that an Air Mask Technician has never had to wear an SCBA is unfounded and unsupported by the record. In other words, the ACFD does not have any permanent light duty firefighter positions that are not required to respond to fires and be ready to assume a role in fire suppression and/or search and rescue. JA503-504, 508-509 (Culleny 30(b)(6) Transcript 98:13-99:5, 122:9-123:2); JA359 (TRO Transcript 69:14-69:17).

Plaintiff's own expert acknowledged the potential for someone on the Air Unit to enter into an atmosphere that would necessitate the need for an SCBA, which was also confirmed by Fire Chief Scott Evans. JA571-572 (Krause Transcript 88:21-89:24); JA346-347, 349 (TRO Transcript 56:19-57:9 59:15-59:25). As the number of firefighters in the ACFD has decreased substantially in recent years, the probability of the Air Mask Technician being required to enter the IDLH environment and wear the air mask is even higher than it was in the past. The Department employed 274 firefighters in April 2009. By January 2019, the time of Plaintiff's accommodation request, the Department employed 189 firefighters. JA166-172 (ACFD Roster 2009 and 2019).

Similarly, due to a lack of available firefighters and/or due to an overwhelming amount of fire calls, a firefighter who is usually assigned to be the Air Mask Technician may be needed in an emergency to respond to a fire call and

engage in fire suppression activities, if necessary. In fact, such a situation did arise in August 2020. On August 4, 2020, all firefighters including administrative and prevention personnel, and including Plaintiff, were called in for emergency response purposes, including to put the reserve apparatus in service due to the overwhelming call volume caused by a tropical storm. However, Plaintiff refused to report. JA389-390 (Memorandum from Culleny to Evans Re: Tropical Storm); JA405-406 (Smith Transcript 82:20-83:17).

Plaintiff's own expert Robert Krause also acknowledged that situations such as these could arise and it is reasonable for the Department to have those in the fire shop put a reserve apparatus in service; Krause also agreed that Plaintiff not being able to wear an air mask due to his beard could be a hardship and stress the Department. JA567-568 (Krause Transcript 72:6-73:21). Expert Krause also acknowledged there is no guarantee that where Plaintiff is stationed will remain out of the smoke and IDLH area, due to constant changes in conditions, such as wind direction, and that it is important for fire departments to be as prepared as possible for sudden changes that put firefighters at risk and to have plans in place for these scenarios. JA563-566 (Krause Transcript 60:21-61:11, 69:16-70:12).

Even if he is stationed outside of the IDLH atmosphere, Plaintiff can be ordered at any time by a superior on the fireground or in another emergency to perform operations that would require him to use an SCBA, be it for rescue, fire

suppression or standby. Plaintiff's own expert Robert Krause acknowledged that the Fire Department has the authority to determine what the mission of Plaintiff in the Air Mask Technician's role is and to order him into fire suppression duties if needed at the scene of a fire. JA569-570 (Krause Transcript 78:5-78:23; 82:10-82:18). Other scenarios exist in which Plaintiff might be needed or tasked with engaging in activities that may necessitate the use of an SCBA air mask, including in the case of a building collapse or where there were other individuals that he could be teamed up with for rescue or suppression purposes. JA571-572 (Krause Transcript 88:21-89:24). Plaintiff's expert also acknowledged that having a firefighter with a beard that cannot engage in any activities that require an air mask, even in emergency situations, could potentially stress the Fire Department. JA567-568 (Krause Transcript 72:6-73:21).

Regardless of the reasons for Plaintiff's refusal, the fact remains that he has at least on one occasion been ordered to perform fire suppression duties— despite being an Air Mask Technician—and could be called on to do so again, as is the reality of the duty of all members of the ACFD. Further, Plaintiff does not dispute that an Air Shop custodian engaged in fire suppression after being ordered to do so in 2020. JA631-632 (Responsive Statement of Material Facts ¶ 15).

Therefore, Plaintiff's contentions about the responsibilities of Air Mask Technicians and other Fire Shop employees are disproved by undisputed facts in the

record. As the District Court found, the fact that it may be an infrequent responsibility or duty does not negate that being able to safely respond to fire emergencies and provide a response that does not risk the safety of his fellow firefighters, the public, or himself, is an essential duty of a firefighter.

Plaintiff's refusal to perform fire suppression in 2020 clearly created an undue hardship on the ACFD.  ACFD was responding to numerous emergencies during a tropical storm, including several structural collapses and Plaintiff's fellow firefighters were forced to respond to an emergency call with only three members. Regardless of official titles, all ACFD members besides Plaintiff—who refused the assignment—were placed in emergency response roles that day.  As the District Court Judge below found, one would be "hard-pressed to imagine a circumstance that would create a greater undue burden—or a higher cost—on a fire department than the potential risk of injury or loss of life to a fellow firefighter or member of the public." *See Bhatia v. Chevron U.S.A., Inc.,* 734 F.2d 1382, 1384 (9th Cir.1984) (upholding grant of summary judgment to employer where plaintiff alleged employer discriminated against him on the basis of his religion by requiring all employees whose duties involved potential exposure to toxic gases to shave any facial hair that prevented them from achieving gastight face seal when wearing a respirator because employer established that if "it retained [the plaintiff] as a machinist and directed his supervisors to assign [him] to only such duties as involved

no exposure to toxic gas," the employer would be burdened by having to "revamp its currently unpredictable system of duty assignments to accommodate the need for predicting whether particular assignments involved potential exposure to toxic gases" and requiring the plaintiff's coworkers "to assume his share of potentially hazardous work"); *see also E.E.O.C. v. GEO Grp., Inc.,* 616 F.3d 265 (3d Cir. 2010).

While Plaintiff in his summary judgment motion brief and appellate brief raised for the first time an argument that the City did not engage in the interactive process or consider alternative accommodations (accommodations that were never raised until now and would still cause hardship), the record is replete with communications back and forth between Plaintiff, Deputy Chief Culleny, Human Resources, the Business Administrator, and others regarding the request, and in which he had an opportunity to present alternative accommodations. The record is also replete with communications made by Deputy Chief Culleny: (1) to PEOSH in order to ascertain whether there were exemptions to the regulation permitted for firefighters to wear a beard, and (2) to air mask vendors in order to determine whether there was an alternative air mask available for firefighters with beards to wear.    Further, the binding regulations undercut all of the "alternative accommodations" that Plaintiff raises in his appellate brief, which all entail him wearing an air mask with some level of facial hair.

35

Despite Plaintiff's bold unsupported assertions, the ACFD does not have a policy or practice of exempting those assigned as Air Mask Technician from assuming roles in suppression, search and rescue or any activity in which an SCBA is required. All members, including those assigned as Air Mask Technician, are required to be fit-tested to ensure they can wear the SCBA mask with a proper seal and be ready to assume a role in any activity in which an SCBA may be required at any time. In fact, the Respiratory Protective Program for the ACFD provides that "[t]he standardized use of SCBA is an <u>essential part</u> of the complete personal protective equipment provided for *each member* of the Atlantic City Fire Department." JA073-074 (Respiratory Protective Program). The ACFD does not have permanent positions that are not required to be able to respond to fires and be ready to assume a role in any activity in which an SCBA may be required. JA503-504, 508-509 (Culleny 30(b)(6) Transcript 98:13-99:5, 122:9-123:2); JA359 (TRO Transcript 69:14-69:17).

Alternatively, an undue hardship can be found where the accommodation would compromise a collective bargaining agreement and/or cause an impact on co-workers. *Miller v. Port Auth. of New York & New Jersey*, 351 F. Supp. 3d 762, 789 (D.N.J. 2018), aff'd, 788 F. App'x 886 (3d Cir. 2019); *Bhatia v. Chevron U.S.A., Inc.*, 734 F.2d 1382, 1384 (9th Cir.1984) (employer would be burdened by having to revamp processes and requiring plaintiff's coworkers "to assume his share of

36

potentially hazardous work"); *Aron v. Quest Diagnostics Inc.*, 174 F. App'x 82, 83

(3d Cir. 2006) ("recognizing that proposed accommodation would constitute undue

hardship, in part, because it "would result in unequal treatment of the other

employees and negatively affect employee morale"). An accommodation that would

force the City to change the nature of Plaintiff's position and duties such that he

would be prohibited from performing any duties while wearing an air mask would

violate the collective bargaining agreement between the City and the IAFF Local

198, of which the Plaintiff is a bargaining unit member. Article 7, titled

"Management Rights," states in relevant part:

> It is the right of the City to...assign and direct its employees;...maintain
> the efficiency of its operations; determine the methods, means and
> personnel by which its operations are to be conducted; determine the
> content of job classifications;...take all necessary actions to carry out its
> mission in daily activities and in emergencies; and, exercise complete
> control and discretion over its organization and the technology of
> performing its work.

JA092 (collective bargaining agreement). An accommodation which required the

City to alter Plaintiff's responsibilities and duties such that he was prohibited from

performing any duties while wearing an air mask would necessarily violate these

management rights, including but not limited to the City's right to determine the

methods, means and personnel by which to operate, to determine the content of job

classifications, and to take all necessary actions to carry out its operations in daily

activities and emergencies. Such an accommodation would also unfairly burden Plaintiff's co-workers to assume his share of potentially hazardous work.

For the aforementioned reasons, Plaintiff's Title VII failure to accommodate claim must fail, and the District Court's decision dismissing this claim with prejudice should be affirmed.

B.    *Retaliation Claim*

As to Plaintiff's Title VII retaliation claim, courts analyze retaliation claims under a three-step burden shifting framework. First, the Plaintiff must make a prima facie showing that: (1) he engaged in activity protected by Title VII; (2) the employer took an adverse employment action against him; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action. *See Moore v. City of Phila.*, 461 F.3d 331, 340–41 (3d Cir. 2006). If the Plaintiff makes this showing, the burden shifts to the employer to advance a "legitimate, non-retaliatory reason" for its conduct. *Id.* (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 501 (3d Cir. 1997)). If the employer makes such a showing, the burden shifts back to the Plaintiff to "convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Id*. at 342 (quoting *Krouse*, 126 F.3d at 500–01).

Here, during discovery Plaintiff failed to allege any adverse employment action taken against him for his request to wear a beard. Aside from the denial of Plaintiff's request to wear a beard, Plaintiff does not allege that the Defendants have retaliated against him in any other way. To the extent Plaintiff argues that the denial of the request itself is an adverse employment action or that if Plaintiff continued to wear a beard he would have faced an adverse employment action, the Defendants had "legitimate, non-retaliatory reasons" for their decision to enforce its Grooming Policy and to deny Plaintiff's request to wear a beard due to significant safety interests and the regulations which are binding on the City, as described in detail above. Plaintiff falsely stated that the only "non-retaliatory explanation offered by ACFD" for the denial of an accommodation was safety; again ignoring the binding state and federal regulations. The Plaintiff has advanced no evidence that these explanations by the City are false, nor that retaliation was the real reason for the adverse employment action.

Prior to Plaintiff's summary judgment opposition brief, Plaintiff failed to allege any adverse employment action taken against him for his request to wear a beard, aside from the denial of Plaintiff's request itself. In Plaintiff's summary judgment and appellate briefs, he argued for the first time that he was retaliated against because of discipline he faced for being insubordinate when he refused to respond to direct orders to put a fire apparatus in service during a tropical storm

emergency.  Plaintiff testified multiple times that the denial of his request for a beard

is the *only* way in which he is alleging retaliation:

> Q:  ...In what way have the defendants retaliated against you for
> exercising your right to practice your religion?
> A. By denying my request.
> Q. Are there any other ways in which they have retaliated
> against you?
> A. Just the request's denial.

JA412-413  (Smith  Transcript  151:11-151:17,  212:5-212:17).  Plaintiff  now

contradicts his own deposition testimony to make allegations of retaliation not found

in  the  Complaint  or  discovery  responses.  A  certification  contradicted  by  the

certifying party's own deposition testimony is not sufficient to survive summary

judgment. *See Davila v. City of Camden*, 66 F. Supp. 3d 529, 535 (D.N.J. 2014).

Conclusory, self-serving affidavits are insufficient to withstand a motion for summary

judgment. *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir.

2009); *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002).  Plaintiff's

late reference to this event which occurred prior to the taking of the deposition

testimony does not create a disputed fact. Further, Plaintiff voluntarily signed an

agreement  regarding  these  disciplinary  charges  for  insubordinate  behavior  in

refusing  to  report  and  comply  with  orders  when  all  firefighters,  including

administrative and prevention personnel, were called in for emergency response

purposes to the overwhelming call volume caused by a tropical storm, with the

agreement stating that "Smith does not contest the allegations enumerated in the Request for Disciplinary Action."

Further, even if the disciplinary agreement was shown to be an adverse action there is no causal connection between the accommodation request or lawsuit and the disciplinary charges. A causal connection can be demonstrated by showing: "(1) temporal proximity between the protected activity and the adverse employment action; (2) an intervening pattern of antagonism; or (3) other facts, that, when 'looked at as a whole,' are sufficient to raise an inference." *Newton–Haskoor v. Coface N. Am.,* No. 11-3931, 2012 WL 1813102, at *5 (D.N.J. 2012) (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 280-81 (3d Cir. 2000)). "Temporal proximity between the protected activity and the adverse employment action can be circumstantial evidence of causation, as it is often sufficient to raise the inference that...protected activity was the likely reason for the adverse action." *Rogers v. Alternative Res. Corp.*, 440 F. Supp. 2d 366, 376 (D.N.J. 2006).

Here, no facts exist which link the request for an accommodation made in January 2019 or the pending lawsuit filed in February 2019, with the disciplinary charges brought against Plaintiff 18 months later in August 2020 or the disciplinary settlement agreement signed over two years later in May 2021 and there is not sufficient temporal proximity to create such a causal link. *See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217 (3d Cir. 2007) ("a gap of three months

between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment."); *Andreoli v. Gates*, 482 F.3d 641 (3d Cir. 2007) (five-month time period between complaint and adverse action insufficient to raise inference of causation); *Young v. Hobart West Grp.*, 897 A.2d 1063 (App. Div. 2005) (four-month gap between complaint and termination is insufficient to establish causal link).

For the aforementioned reasons, Plaintiff's Title VII retaliation claim must fail, and the District Court's decision dismissing this claim with prejudice should be affirmed.

**POINT IV**
**THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DECLINING TO AWARD INJUNCTIVE RELIEF**

*Scope and Standard of Review*

A District Court's decision not to grant injunctive relief is reviewed under the deferential abuse of discretion standard. *Free Speech Coalition, Inc. v. Attorney General United States*, 974 F.3d 408, 430 (3d Cir. 2020).

*Argument*

The District Court correctly determined at the outset of this litigation that Plaintiff was not entitled to a preliminary injunction enjoining the City from disciplining Plaintiff for violating the ACFD's Grooming Policy, effectively allowing him to wear a beard during the pendency of this matter, because there was

no likelihood of success on the merits. Plaintiff initially filed an appeal from the preliminary injunction decision to the Third Circuit, Docket No. 19-1665, but then voluntarily dismissed the appeal with prejudice.

To secure the relief of a preliminary injunction or TRO, a petitioner must demonstrate that: "(1) [he] is likely to succeed on the merits; (2) denial will result in irreparable harm to [him]; (3) granting the injunction will not result in irreparable harm to the defendant[s]; and (4) granting the injunction is in the public interest." *Maldonado v. Houstoun*, 157 F.3d 179, 184 (3d Cir. 1998); *see also Ballas v. Tedesco*, 41 F. Supp. 2d 531, 537 (D.N.J. 1999). A petitioner must establish that all four factors favor preliminary relief. *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990).

For all of the reasons as set forth above, Plaintiff does not have a likelihood of success on the merits of each of his claims, including the Free Exercise, Title VII and Equal Protection claims. Accordingly, this Court should affirm the District Court's denial of Plaintiff's application for a preliminary injunction.

### *CONCLUSION*

For all of the foregoing reasons, the Appellees respectfully request that the

Third Circuit affirm the judgment of the District Court denying summary judgment

to the Appellant and granting summary judgment against the Defendants.


Respectfully submitted,

CLEARY GIACOBBE ALFIERI JACOBS, LLC
955 State Route 34, Suite 200
Matawan, New Jersey 07747
(732) 583-7474
Attorneys for Defendants-Appellees, City of
Atlantic City, Scott Evans, Thomas J. Culleny

By:    *s/ Nicholas DelGaudio*
       NICHOLAS DELGAUDIO (081632013)


Dated: May 31, 2024

## CERTIFICATION OF BAR MEMBERSHIP PURSUANT TO LAR 28.3(d)

I, Nicholas DelGaudio, Esq., am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit. I certify under penalty of perjury that the foregoing is true and correct, pursuant to 28 U.S.C. § 1746.

> CLEARY GIACOBBE ALFIERI JACOBS, LLC
> 955 State Route 34, Suite 200
> Matawan, New Jersey 07747
> (732) 583-7474
> Attorneys for Defendants-Appellees
>
> By:    *s/ Nicholas DelGaudio*
>        NICHOLAS DELGAUDIO (081632013)

Dated: May 31, 2024

## CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME LIMIT PURSUANT TO FED. R. APP. P. 32(g)

1.     This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding parts of the document exempted by Fed. R. App. P. 32(f), this document contains 10,040 words.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using the 2016 version of Microsoft Word in 14 point Times New Roman font.

CLEARY GIACOBBE ALFIERI JACOBS, LLC
955 State Route 34, Suite 200
Matawan, New Jersey 07747
(732) 583-7474
Attorneys for Defendants-Appellees

By:    *s/ Nicholas DelGaudio*
        NICHOLAS DELGAUDIO (081632013)

Dated: May 31, 2024

## CERTIFICATIONS PURSUANT TO LAR 31.1(c)

The text of the Defendants' electronic brief is identical to the text of the paper

copies thereof. A virus detection program was run on the filing and no viruses were

detected. The virus detection used was Malwarebytes version 1.2.0.1125 and

Symantec Endpoint Protection version 14.3.10148.8000. I declare under penalty of

perjury the foregoing is true.

CLEARY GIACOBBE ALFIERI JACOBS, LLC
955 State Route 34, Suite 200
Matawan, New Jersey 07747
(732) 583-7474
Attorneys for Defendants-Appellees

By:    *s/ Nicholas DelGaudio*
        NICHOLAS DELGAUDIO (081632013)

Dated: May 31, 2024

## CERTIFICATE OF FILING AND SERVICE PURSUANT TO LAR 31.1

On May 31, 2024, I caused this brief to be electronically filed through CM/ECF system and served on all parties or their counsel of record through the CM/ECF system.

CLEARY GIACOBBE ALFIERI JACOBS, LLC
955 State Route 34, Suite 200
Matawan, New Jersey 07747
(732) 583-7474
Attorneys for Defendants-Appellees

By:    *s/ Nicholas DelGaudio*
       NICHOLAS DELGAUDIO (081632013)

Dated: May 31, 2024

47