No. 23-3265

# United States Court of Appeals for the Third Circuit

ALEXANDER SMITH,

Plaintiff-Appellant,

v.

CITY OF ATLANTIC CITY, ET AL.,

Defendants-Appellees.

On Appeal from the United States District Court
for the District of New Jersey, Hon. Christine P. O'Hearn
No. 1:19-cv-6865

## APPELLANT'S REPLY BRIEF

JOSHUA C. MCDANIEL
PARKER W. KNIGHT III
KATHRYN F. MAHONEY
HARVARD LAW SCHOOL
  RELIGIOUS FREEDOM CLINIC
6 Everett Street, Suite 5110
Cambridge, MA 02138
(617) 496-4383

REBECCA R. DUMMERMUTH
KAYLA A. TONEY
FIRST LIBERTY INSTITUTE
1331 Pennsylvania Ave. NW, Ste. 1410
Washington, DC 20004
(202) 918-1554

JEFFREY C. MATEER
DAVID J. HACKER
JUSTIN E. BUTTERFIELD
FIRST LIBERTY INSTITUTE
2001 W. Plano Pkwy, Ste. 1600
Plano, TX 75075
(972) 941-4444

*Attorneys for Plaintiff-Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES....................................................................iii

INTRODUCTION.............................................................................. 1

ARGUMENT..................................................................................... 3

   I.  ACFD hasn't shown that allowing an administrative employee to wear a beard would impose an undue hardship. .......................... 3

     A.  Mr. Smith's beard would not compromise safety....................... 5

     B.  ACFD's post hoc alternative reasons don't show undue hardship. .................................................................................. 10

        1.  ACFD cannot rely on hardships it didn't claim when it denied Mr. Smith's accommodation. ................................ 10

        2.  State and federal regulations do not impede Mr. Smith's accommodation. ............................................................... 12

        3.  The collective-bargaining agreement and effects on coworkers also don't establish an undue hardship.......... 18

   II.  Mr. Smith has shown triable issues on his retaliation claims.....21

   III. ACFD violated the Free Exercise Clause.................................... 25

   IV. ACFD violated the Equal Protection Clause. ............................ 31

   V.  A preliminary injunction is appropriate on remand. .................. 32

CONCLUSION ............................................................................... 33

COMBINED CERTIFICATIONS..................................................34

# TABLE OF AUTHORITIES

## Cases

*14 Penn Plaza LLC v. Pyett,*
   556 U.S. 247 (2009) ................................................................... 18

*A.W. on behalf of N.W. v. Princeton Pub. Sch. Bd. of Educ.,*
   No. 20-2433, 2022 WL 989348, at *3 (3d Cir. Mar. 15, 2022) ....... 18, 19

*Ansonia Bd. of Educ. v. Philbrook,*
   479 U.S. 60 (1986) .................................................................... 11

*Barnes v. Am. Tobacco Co.,*
   161 F.3d 127, 141 n.17 (3d Cir. 1998) ............................................ 23

*Bey v. City of N.Y.,*
   999 F.3d 157 (2d Cir. 2021) ........................................................ 30

*Bolden-Hardge v. Office of Cal. State Controller,*
   63 F.4th 1215 (9th Cir. 2023) ...................................................... 16

*Daniels v. Sch. Dist. of Phila.*
   776 F.3d 181 (3d Cir. 2015) .................................................... 22, 23

*Davila v. City of Camden,*
   66 F. Supp. 3d 529 (D.N.J. 2014) ............................................ 23, 24

*Dique v. N.J. State Police,*
   603 F.3d 181 (3d Cir. 2010) ........................................................ 31

*EEOC v. Abercrombie & Fitch Stores, Inc.,*
   575 U.S. 768 (2015) ..................................................................... 6

*Fraternal Ord. of Police v. City of Newark,*
   170 F.3d 359 (3d Cir. 1999); .................................................. 28, 29

*Fulton v. City of Philadelphia*,
   593 U.S. 522 (2021) ........................................................... 25, 26, 27, 29

*Galli v. N.J. Meadowlands Comm'n*,
   490 F.3d 265 (3d Cir. 2007) ................................................... 4

*Groff v. DeJoy*,
   600 U.S. 447 (2023) ............................................................ passim

*Hamilton v. City of N.Y.*,
   563 F. Supp. 3d 42 (E.D.N.Y. 2021) ..................................... 30

*Hassan v. City of N.Y.*,
   804 F.3d 277 (3d Cir. 2015) ................................................. 31

*Kennedy v. Bremerton Sch. Dist.*,
   597 U.S. 507 (2022) ............................................................ passim

*Kirleis v. Dickie, McCamey & Chilcote, P.C.*,
   560 F.3d 156 (3d Cir. 2009) ................................................. 24

*Maryland v. Louisiana*,
   51 U.S. 725 (1981) ............................................................... 16

*Metro. Edison Co. v. N.L.R.B.*,
   460 U.S. 693 (1983) ............................................................. 19

*Paradise Hotel Corp. v. Bank of Nova Scotia*,
   842 F.2d 47 (3d Cir. 1988) ................................................... 24

*Patterson v. Strippoli*,
   639 F. App'x 137 (3d Cir. 2016) ........................................... 9

*Ricci v. DeStefano*,
   557 U.S. 557 (2009) ............................................................. 15

*Stradford v. Sec'y Pa. Dep't of Corr.*,
   53 F.4th 67 (3d Cir. 2022) .................................................... 31

*Tandon v. Newsom,*
    593 U.S. 61 (2021) ................................................... 25, 26, 27

*Tenafly Eruv Ass'n v. Borough of Tenafly,*
    309 F.3d 144 (3d Cir. 2002) ................................................ 29

*United States v. Bd. of Educ.,*
    911 F.2d 882 (3d Cir. 1990) ........................................... 16, 17

*United States v. Virginia,*
    518 U.S. 515 (1996) ......................................................... 9

**Statutes**

29 C.F.R. § 1910.134 .......................................................... 14

29 U.S.C. § 652(5) ............................................................. 13

42 U.S.C. § 2000e-7 ....................................................... 15, 17

N.J. Admin. Code § 12:100-10.10 ...................................... 13, 14

N.J. Admin. Code § 12.100-10.2 ............................................ 13

**Other Authorities**

*News Release: Atlantic City Fire Department Graduates 11 Recruits*, CITY
    OF ATLANTIC CITY (May 17, 2024) ......................................... 7

**Constitutional Provisions**

U.S. Const. art. VI, cl. 2 ..................................................... 16

# INTRODUCTION

This case asks an easy question: can the government force an employee to violate his faith rather than provide him with an accommodation from a policy designed for situations his job requires him to avoid? Common sense says "no," and the law agrees. As Mr. Smith laid out in detail in his opening brief, Title VII, the Free Exercise and Equal Protection Clauses, and their state analogs all protect his right to serve his community without compromising his faith. And at the summary judgment stage, Mr. Smith need only show that a reasonable juror could agree—a bar he easily clears. Yet at every turn, rather than engage with Mr. Smith's arguments, ACFD obfuscates with post hoc alternatives, mischaracterizations of the law, and factual leaps that fail to view the record in Mr. Smith's favor.

On Mr. Smith's Title VII claim, ACFD must make a detailed showing that *any* accommodation would cause an "undue hardship," which the Supreme Court recently explained means a "substantial increased cost." *Groff v. DeJoy*, 600 U.S. 447, 470–71 (2023). ACFD hasn't done that. A generalized interest in SCBA mask safety—the only hardship ACFD articulated when it denied Mr. Smith's accommodation—is insufficient

and fails to account for the fact that Mr. Smith's Air Mask Technician role has never required him to wear an SCBA. Similarly, safety doesn't justify the retaliatory actions ACFD took when it denied Mr. Smith's accommodation, threatened to fire him, ordered him onto a fire suppression team without required training, and suspended him for refusing to report.

ACFD fares no better on Mr. Smith's constitutional claims. Because its policy is neither neutral nor generally applicable, the Free Exercise Clause requires strict scrutiny, which ACFD cannot satisfy. And ACFD violated the Equal Protection Clause when it treated Mr. Smith worse than previous Air Mask Technicians, who were never called to suppress fires, as well as off-duty firefighters, who are far more likely to need to wear an air mask.

ACFD doesn't confront these arguments. Instead, it discusses alternative justifications for its actions that it never raised with Mr. Smith when it considered and denied his accommodation. But ACFD cannot satisfy its burdens with new rationalizations asserted in litigation; and those alternatives would fail regardless. For instance, ACFD makes much of regulations that govern SCBA use, yet those

regulations don't apply to Mr. Smith; and, even so, they can't override his federal antidiscrimination rights.

ACFD also misunderstands the law. It makes no attempt to quantify any hardship that would result from Mr. Smith's accommodation, as *Groff* requires. It ignores most of Mr. Smith's retaliation theories, claiming that a single deposition answer from a nonlawyer relinquishes legal theories supported by the record. And it relies on dicta in a footnote from a Third Circuit free exercise case to argue that the non-generally-applicable policy here receives only intermediate scrutiny—a rule that this Court has never applied and that contradicts Supreme Court doctrine.

The fact remains that ACFD failed to meet its legal obligations when it denied Mr. Smith's reasonable religious accommodation. Mr. Smith deserves his day in court to make his case to a jury, as well as an injunction allowing him to practice his faith while he does so.

## ARGUMENT

## I. ACFD hasn't shown that allowing an administrative employee to wear a beard would impose an undue hardship.

To prevail on an undue hardship defense, an employer must demonstrate with specificity how an accommodation would result in

3

"substantial increased costs" in light of its "nature, size and operating cost." *Groff*, 600 U.S. at 470–71 (cleaned up). At the summary judgment stage, the employer's burden is even higher. For an employer to win, the increased cost must be so substantial and undisputed that, even taking all facts in the employee's favor, no juror would side with the employee. *See Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007).

ACFD has not made that showing. Though it recites the *Groff* standard, ACFD never identifies any quantifiable cost that a factfinder could weigh. Nor does it address most of the facts in Mr. Smith's opening brief that undermine its broad safety rationale. Instead, ACFD dedicates most of its brief to discussing alternative hardships that it "never raised" in its "contemporaneous correspondence with Mr. [Smith]," or its accommodation denial. *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 543 n.8 (2022). Those alternatives don't amount to undue hardships in any case.[1]

---

[1] Although the district court held in the alternative that ACFD satisfied Title VII by making a "good faith effort" to accommodate, JA018, ACFD doesn't defend that holding on appeal for good reason: that defense does not apply when an employer offers no accommodation. Opening Br. at 37–38.

## A.  Mr. Smith's beard would not compromise safety.

ACFD continues to insist that safety required it to deny Mr. Smith's accommodation. Resp. Br. at 29. But ACFD ignores Mr. Smith's arguments that his job duties and responsibilities don't permit or require SCBA use, and that a short beard[2] would not cause meaningful safety issues. Opening Br. at 31–36; *see also* Dkt. No. 41, Brief of Amici Curiae Firefighters and Paramedics, at 1–3 (explaining that for decades the four amici "were able to serve on the frontlines . . . while wearing their beards"). And even if ACFD's purported safety concerns were legitimate, it remains unclear why the only option to allay them is a rule that an administrative employee must shave every day. *See Groff*, 600 U.S. at 473 (directing employers to consider multiple accommodations); Opening Br. at 19, 30, 38 (listing accommodation options that would allow Mr. Smith to grow a beard).

---

[2] ACFD claims Mr. Smith asked for a three-inch beard. Resp. Br. at 28. Though his beard was about three inches long when he asked for an accommodation, Mr. Smith didn't ask for any specific length of beard. *See* JA174. At the summary judgment stage, it would be inappropriate to resolve this open issue in ACFD's favor.

Rather than grapple with these questions, ACFD's response brief makes three arguments about safety, none of which demonstrates undue hardship.

First, ACFD references its general policy, explaining that it "does not have a policy or practice of exempting those assigned as Air Mask Technician" from the requirement to be ready for SCBA use. Resp. Br. at 30, 36. Of course, Mr. Smith wouldn't need an accommodation if Air Mask Technicians were already exempted from ACFD's policies as an ordinary matter. But "Title VII requires otherwise-neutral policies to give way to the need for an accommodation." *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775 (2015).

Rather than point to general policies, employers must consider specific circumstances and evaluate whether accommodation is possible. *See Groff*, 600 U.S. at 468 (calling the undue hardship analysis a "fact-specific inquiry"). Here, Mr. Smith has presented evidence that his job requires him to stay away from situations requiring SCBA use, and that he can safely perform his job with a beard. *See* JA230; JA199; Opening Br. at 31–33. Mr. Smith also showed that, whatever its official policy, ACFD did not train or equip him for SCBA use for years, with no safety

repercussions. *See* JA424; JA302. An appeal to general department policy is no response to those facts.

Second, ACFD points to staffing shortages, arguing it must be able to call on every single employee to fight a fire at any time. Resp. Br. at 30–31. As an initial matter, since the time it denied Mr. Smith's accommodation, ACFD has hired many more employees, mitigating any staffing issues. *See, e.g.*, JA553–57; *News Release: Atlantic City Fire Department Graduates 11 Recruits*, CITY OF ATLANTIC CITY (May 17, 2024), https://perma.cc/R3E9-YSHZ.

Regardless, even in all-hands-on-deck situations, it would be unsafe for Mr. Smith to enter a fire. Mr. Smith's position requires him to stay in a clean environment with his Air Unit—a separate vehicle from the fire engine his firefighting colleagues use—to provide firefighters with fresh air so they can safely re-enter a burning building without delay. *See* JA579; JA587. If conditions change at the scene to make Mr. Smith's station less safe, as his expert Robert Krause made clear, he's trained to "get the hell out of there." JA588; *contra* Resp. Br. at 32. As Krause testified, it would not make any sense for Mr. Smith "to stay there with an SCBA on and fill [air] cylinders for brothers and sisters who are

7

coming to get fresh air." JA588. That is why, prior to this litigation, no Air Mask Technician had been required to enter a fire or wear an SCBA since at least 1987—through all the staffing ups and downs that occurred over more than three decades.[3] *See* JA278; JA676–77.

Furthermore, even at ACFD's lowest staffing numbers, ACFD didn't keep every employee ready to fight fires. ACFD never repealed its emergency call-back exemption to make off-duty firefighters more available, even though they are actually trained to fight fires and far more likely to be called than Mr. Smith. *See* JA307–08. And ACFD didn't train or equip high-level officers to perform suppression at all. *See* JA302. If ACFD needed to ensure every employee was available to help in emergencies, it surely would have adjusted its policies and practices to reflect that need.

Third, ACFD falls back on the 2020 tropical storm incident, when it ordered an untrained and unequipped Mr. Smith onto a suppression

---

[3] ACFD characterizes this point as a "bald assertion[]" that is "unfounded and unsupported by the record." Resp. Br. at 31. Not so. Mr. Smith himself never had to wear an SCBA, and the Air Mask Technician who preceded him filed two affidavits saying the same. JA278; JA676–77. ACFD has presented no evidence of any time an Air Mask Technician has had to wear an SCBA before this litigation.

team. Resp. Br. at 33–35. But post-litigation conduct, especially when there's an indication it's retaliatory, is "not probative" of pre-litigation conduct. *Patterson v. Strippoli*, 639 F. App'x 137, 143 (3d Cir. 2016); *United States v. Virginia*, 518 U.S. 515, 533 (1996) (noting in analogous First Amendment context that government's claimed "justification must be genuine, not hypothesized or invented post hoc in response to litigation").

At any rate, the tropical storm incident contradicts ACFD's safety claim. Ordering Mr. Smith onto a suppression team without training or equipment threatened his and his coworkers' safety. *See* JA395–98 (New Jersey safety agency sanctioned ACFD for bypassing safety protocols). And had he obeyed, Mr. Smith would have left colleagues without an Air Mask Technician to respond to fires needing air tank support. *See* JA267–68. If anything, ACFD's post-litigation decision to put everyone at risk by sending an unequipped and untrained employee away from his proper post and into a suppression role suggests its motive can only have been either to retaliate or to shore up its legal case.

But even interpreting that incident as ACFD does, it shows only that accommodating Mr. Smith would at most require ACFD to bring in a

9

single employee to cover for Mr. Smith once every 35 years or so. That's still not an undue hardship. *See Groff*, 600 U.S. at 468–69.

In sum, ACFD has not shown that safety requires it to force Mr. Smith to remain cleanshaven. His role doesn't require SCBA use, and ordering him into a fire—leaving the air truck unmanned—would compromise the safety of the entire crew. General policies, staffing fluctuations, and a single incident of post-litigation conduct neither undermine those facts nor show an undisputed undue hardship sufficient to grant summary judgment.

## B. ACFD's post hoc alternative reasons don't show undue hardship.

ACFD suggests that three alternative hardships satisfy its burden: safety regulations, its collective-bargaining agreement with Mr. Smith's union, and the effects of an accommodation on coworkers. None is an undue hardship.

### 1. ACFD cannot rely on hardships it didn't claim when it denied Mr. Smith's accommodation.

An employer cannot rely on post hoc rationales it failed to communicate at the time it considered and denied an accommodation. *See Kennedy*, 597 U.S. at 543 n.8 (rejecting school district's argument that it

"never raised . . . in its contemporaneous correspondence with Mr. Kennedy"). Under Title VII, an employer must consider alternative accommodations, explain potential barriers, and engage in an interactive process with an employee seeking accommodation. *See Groff*, 600 U.S. at 473; *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986) (explaining that "bilateral cooperation is appropriate" when considering religious accommodations). ACFD didn't do any of that.

To begin with, there was no back-and-forth discussion of hardships or possible accommodations. Although ACFD now claims the "record is replete with communications" discussing the accommodation request, Resp. Br. at 35, it is unclear what communications ACFD means. After Mr. Smith made his accommodation request, the record shows six interactions, none of which involved any substantive discussion of alternative accommodations.[4]

---

[4] The interactions included: (1) the City Solicitor telling Mr. Smith to submit proof of his sincerity, JA669; (2) Chief Culleny ordering Mr. Smith to stop responding to fires until his request was resolved, JA230; (3) Chief Culleny requesting additional information about Mr. Smith's beliefs, JA189, 191, 193; (4) Mr. Smith emailing about the status of his request, JA192; (5) HR instructing Mr. Smith to fill out a complaint form, JA231, 196–209; and (6) the accommodation denial, JA210.

The only mention of hardship in these communications was a single sentence in ACFD's denial citing "overwhelming safety concerns for [Mr. Smith] as well as for [his] fellow firefighters and the public." JA210. It is thus "unsurprising[]" that neither the preliminary injunction ruling nor the opinion granting summary judgment relied on the alternative hardships ACFD now raises. *Kennedy*, 597 U.S. at 543 n.8.

ACFD suggests it was Mr. Smith's responsibility to anticipate ACFD's unvoiced concerns and present alternatives to address them. Resp. Br. at 35. That's not the law. ACFD must explore how to fulfill employees' religious accommodation requests without undue hardship. And if a reasonable accommodation exists, ACFD must provide it. *See Groff*, 600 U.S. at 473.

Regardless, the additional hardships ACFD now claims all fail on the merits.

### 2. State and federal regulations do not impede Mr. Smith's accommodation.

ACFD spends a large portion of its brief pointing to state and federal regulations about SCBA use for firefighters. Resp. Br. at 27–29. But those regulations are inapposite. Mr. Smith doesn't fight fires, and his job doesn't involve SCBA use, so the regulations don't apply to him. And even

if they did, gestures to regulations alone do not negate an employee's federal antidiscrimination rights.

The state SCBA regulations define their scope in a way that excludes employees like Mr. Smith. They govern how SCBAs need to be "provided to, and used by *firefighters*." N.J. Admin. Code § 12:100-10.10(a) (emphasis added). The regulations define "firefighters" as "member[s] of the fire service who engage[] in the physical activity of rescue, fire suppression or both . . . " N.J. Admin. Code § 12.100-10.2.  Mr. Smith doesn't engage in rescue or fire suppression. *See* JA386. Indeed, his job requires him *not* to engage in those activities so that he can adequately support those who do. Thus, for purposes of these regulations, Mr. Smith isn't a "firefighter" under this definition, and the state SCBA requirements don't apply to him in his current role as Air Mask Technician.

The federal regulations, for their part, do not apply to state and local agencies at all. *See* 29 U.S.C. § 652(5) (covered "employers" do not include "any State or political subdivision of a State"). And though the state regulations incorporate a portion of the federal regulations, they do so only in the section that applies just to "firefighters." N.J. Admin. Code

§ 12.100-10.10(a), (d). As a result, none of the regulations cited by ACFD applies to Mr. Smith.

That makes sense given the regulations' content. The state regulations instruct that SCBAs be worn in four contexts: "1. While engaged in interior structural firefighting; 2. While working in confined spaces where toxic products of combustion or an oxygen deficiency may be present; 3. During emergency situations involving toxic substances; and 4. During all phases of firefighting and overhaul." N.J. Admin. Code § 12.100-10.10(b). The incorporated federal regulations similarly say SCBAs are appropriate when working in atmospheres that are "immediately dangerous to life or health," like burning buildings or confined, smoky areas. 29 C.F.R. § 1910.134(d)(2).

Mr. Smith doesn't engage in any of those activities—his job requires him not to. When Mr. Smith responds to a fire, he stays away from building interiors, confined spaces, and other hazardous atmospheres so that firefighters can take off their masks when they come out for air. *See* JA563–64; *see also* 29 C.F.R. § 1910.134(i)(5)(i) (requiring the compressor Mr. Smith operates to be "situated so as to . . . [p]revent entry of contaminated air into the air-supply system"). So even if Mr. Smith were

a "firefighter" for purposes of the regulations (he is not), the regulations still would not have him wear an SCBA.

In any event, state regulations don't trump *federal* antidiscrimination law. Though Title VII largely preserves state laws, especially state antidiscrimination provisions, it expressly overrides state laws that would "require or permit . . . an unlawful employment practice under this subchapter." 42 U.S.C. § 2000e-7; *cf. Ricci v. DeStefano*, 557 U.S. 557, 590 (2009) (noting that state "prohibition" of practice "may not eliminate [it] as a valid alternative under Title VII"). In other words, if a state law requires something Title VII prohibits, the state law cannot serve as an excuse to violate Title VII.

That, however, is exactly what ACFD advocates here. Title VII requires that ACFD accommodate its employees' religious observance unless it can demonstrate an undue hardship. Though ACFD cannot show an undue hardship, it now contorts a state regulation to create one. That would absolve it of not only accommodating employees but also demonstrating undue hardship with the specificity Title VII requires. *See Groff*, 600 U.S. at 470–71 (highlighting "all relevant factors" employers must discuss to show undue hardship). Still more concerning, that

reasoning would allow states to gut antidiscrimination protections by fiat, quickly running afoul of the Supremacy Clause. U.S. Const. art. VI, cl. 2; *see Maryland v. Louisiana*, 451 U.S. 725, 747 (1981) ("[A] state statute is void to the extent it conflicts with a federal statute," including where "the law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." (cleaned up)). Here, those concerns are heightened because ACFD is invoking state regulations rather than state law to absolve it from its Title VII obligations.

Indeed, this Court has never held (even pre-*Groff*) that a state regulation alone can serve as an undue hardship. Instead, in evaluating a state law's impact, this Court has considered the likelihood of enforcement and the consequences of a violation on the business's operation. *See United States v. Bd. of Educ.*, 911 F.2d 882, 885 (3d Cir. 1990) (explaining that "substantial risk of criminal prosecution, fines, and expulsion from the profession" could amount to undue hardship); *see also Bolden-Hardge v. Office of Cal. State Controller*, 63 F.4th 1215, 1226 (9th Cir. 2023) (discussing *Board of Education* as a case that "focuse[d] on the risk of enforcement"). In fact, in *Board of Education*, this Court

explicitly declined to say that a state statute could be an undue hardship where a likelihood of enforcement isn't established in the record. 911 F.2d at 891. Especially since *Groff* clarified that the undue hardship question requires a "fact-specific inquiry," the mere existence of a state regulation can't satisfy an employer's burden. *See Groff*, 600 U.S. at 468.

ACFD has presented no evidence that the New Jersey safety agency would enforce its SCBA regulations, let alone that the consequences would affect its business operations. It seems highly unlikely that the state would use its prosecutorial resources to punish ACFD for disobeying regulations applicable to firefighters by accommodating an Air Mask Technician who does not fight fires. *Cf.* JA395–97 (citing ACFD for many other safety violations but not SCBA violations). And even in that unlikely event, ACFD could, of course, defend its accommodation under Title VII, which relieves ACFD of any "penalty" or "punishment" imposed by state law if complying with that law would require unlawfully denying a reasonable religious accommodation. 42 U.S.C. § 2000e-7.[5]

---

[5] Given these defenses to enforcement, it's hard to imagine a state regulation could ever be an undue hardship. Though *Board of Education* didn't consider these points, Supremacy Clause concerns and Title VII's preemption clause both support a holding that state regulations can never on their own serve as an undue hardship.

In sum, the regulations cited by ACFD do not apply to Mr. Smith; and, if they did, they wouldn't require him to use an SCBA given his current job duties. Further, the mere existence of a state regulation does not establish an undue hardship, and ACFD hasn't presented any evidence about the risks or effects of enforcement on its business. Therefore, the regulations cannot serve as an undue hardship, especially at the summary judgment stage.

### 3. The collective-bargaining agreement and effects on coworkers also don't establish an undue hardship.

ACFD briefly makes two other arguments about undue hardship. Neither satisfies its burden.

First, ACFD seems to argue that Mr. Smith's union relinquished his Title VII rights in a general provision of his collective-bargaining agreement that allows ACFD to determine its employees' roles. *See* Resp. Br. at 37–38 (quoting JA92). But to the extent ACFD claims the collective-bargaining agreement waived any accommodation right under Title VII, it's well-settled law that "federal antidiscrimination rights may not be prospectively waived" in a collective-bargaining agreement. *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 265 (2009); *A.W. on behalf of N.W. v. Princeton Pub. Sch. Bd. of Educ.*, No. 20-2433, 2022 WL 989348, at *3

(3d Cir. Mar. 15, 2022) ("[P]rospective waivers of rights under federal non-discrimination statutes are unenforceable."). And even if such a waiver could be enforced, it would have to be "explicitly stated," not hidden in a "general contractual provision" like the one ACFD references. *Metro. Edison Co. v. N.L.R.B.*, 460 U.S. 693, 708 (1983).

In any case, ACFD's reading of the "Management Rights" clause proves too much. The provision merely states that the City can "assign and direct its employees," determine methods and means of conducting its operations, and take necessary actions to carry out its mission. JA092. These are, of course, rights that every employer presumptively has. Yet ACFD apparently claims a blanket ability to deny religious accommodations whenever they would touch on the City's direction of employees or operations (that is, always). By that logic, it's hard to imagine any religious accommodation—or, for that matter, any disability accommodation—ACFD could not summarily deny.

Granting an accommodation to Mr. Smith would hardly thwart the City's "Management Rights." As with any other employer, ACFD remains free to manage its employees and operations. That general right, however, does not exempt ACFD from Title VII.

Second, in a single sentence, ACFD claims that an accommodation would "unfairly burden Plaintiff's co-workers to assume his share of potentially hazardous work." Resp. Br. at 38. Not only is that argument unsupported by the record, which indicates that an accommodation would not require Mr. Smith to change his job duties, it's also exactly the argument the Supreme Court rejected in *Groff*. 600 U.S. at 472. Indeed, the record in *Groff* showed more concrete effects on coworkers than ACFD has established here.

When Groff's accommodation was denied, his coworkers had to conduct Sunday deliveries for him for months, and a few complained. *Id.* at 455. In considering that potential hardship, the Supreme Court emphasized that simply referencing coworker burdens does not satisfy the undue hardship standard, because "not all impacts on coworkers are relevant." *Id.* at 472 (cleaned up). An employer must take the "further logical step" of showing how those effects on coworkers would lead to "substantial increased costs." *Id.* at 470, 472.

ACFD hasn't done that. An unsubstantiated sentence claiming coworkers would have to fill in for Mr. Smith does not explain how any potential coworker effects would create substantial increased costs. And

20

ACFD hasn't shown that coworkers would have to fill in for Mr. Smith at all, given that his job does not require any "hazardous work" that he would have to turn down if he maintained a beard. Indeed, forcing Mr. Smith to engage in fire suppression would create a far greater burden on coworkers, because they would be entering hazardous atmospheres without the support of an Air Mask Technician.

* * *

ACFD hasn't shown any undue hardship. It ignores evidence indicating that Mr. Smith's accommodation would be safe. And its alternative theories come too late. Regardless, state regulations do not require Mr. Smith to wear an SCBA, and neither its collective-bargaining agreement nor ACFD's passing reference to coworker effects can override Mr. Smith's statutory right to reasonably practice his religion at work.

## II. Mr. Smith has shown triable issues on his retaliation claims.

Mr. Smith has presented evidence that, in response to his accommodation request, complaint, and lawsuit, ACFD denied his request, threatened to suspend or fire him if he did not shave, ordered him to fight a fire without training or equipment, and suspended him when he refused to do so.

ACFD resists three of those four theories, not by arguing about the evidence or law, but by claiming Mr. Smith has not supported them. *See* Resp. Br. at 39 (claiming the accommodation denial is the only adverse action Mr. Smith experienced). ACFD is mistaken.

The record shows ACFD took all those adverse actions against Mr. Smith soon after his protected conduct. ACFD broke with its own longstanding policies and practices: it commanded Mr. Smith to be cleanshaven though it had not fit tested or trained him or other administrative employees for years, JA289–90; it bypassed its own procedures and went against at least 30 years of its history when it ordered him to join a suppression team before calling in mutual aid, JA278–79, JA307, JA676–77; and it ignored its progressive discipline policy when it threatened suspension or termination in its accommodation denial and then immediately suspended him for refusing to report unequipped to a suppression team, JA434; JA685–86.

That evidence is more than enough for a jury to find that Mr. Smith established a prima facie case for each of his retaliation theories. *See Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 196 (3d Cir. 2015) (a "broad array of evidence" can suggest causal link between protected activity and

adverse actions, including "[t]emporal proximity," "intervening antagonism," or "any other evidence suggesting that the employer had a retaliatory animus").

It makes no difference that Mr. Smith didn't enumerate some of these theories at his deposition. *See* Resp. Br. at 40. Retaliation is a legal claim, not a factual question, and depositions—especially those of non-lawyer parties—are for developing factual evidence, not legal arguments. Mr. Smith, a non-lawyer, cannot reasonably be expected to call to mind all the elements of a legal claim, fit them to the facts of his case, and bind himself to particular legal arguments while being deposed by opposing counsel. *Cf. Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 141 n.17 (3d Cir. 1998) (in the deposition context, "[i]t is unrealistic to require . . . plaintiffs to have an in-depth understanding as to the legal theories behind their claim") (cleaned up). At the very minimum, a jury should be able to weigh his deposition testimony against all the other facts in the record.

ACFD has offered no authority for its argument that a deposition answer binds a party to a specific legal theory. Two of the cases it cites were about conclusory claims, brought up at summary judgment but unsupported by record evidence. *See Davila v. City of Camden*, 66 F.

Supp. 3d 529, 535 n.5 (D.N.J. 2014); *Blair v. Scott Specialty Gases*, 283

F.3d 595, 608 (3d Cir. 2002). And *Kirleis v. Dickie, McCamey & Chilcote,*

*P.C.*, favors Mr. Smith, because this Court found the plaintiff's affidavit

not conclusory, reversing summary judgment because "the task of

weighing the evidence and choosing which side to believe would have

been for a jury." 560 F.3d 156, 161 (3d Cir. 2009). Here, the record

supports Mr. Smith's retaliation theories. If ACFD wanted to bind Mr.

Smith to a single retaliation theory, it could have sent written

interrogatories during discovery. But it didn't do that, and it cannot now

claim that a non-lawyer's deposition response does so.

Nor does Mr. Smith's disciplinary agreement change the analysis.

*See* Resp. Br. at 40–41. The facts listed there (that ACFD ordered Mr.

Smith onto a suppression team and he refused) are undisputed, so Mr.

Smith's admission to them does not waive any legal theory. *See Paradise*

*Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47, 51 (3d Cir. 1988)

(defining waiver as the "intentional relinquishment of a known right").

And the agreement itself says it is not a "waiver of . . . applicable labor

laws." JA683.

24

Finally, ACFD still hasn't established legitimate nonretaliatory reasons for its adverse actions against Mr. Smith. It reiterates its reasons for denying his accommodation (safety and regulations). Resp. Br. at 39. But those are not legitimate reasons to deny Mr. Smith's accommodation and threaten punishment. Worse, they cut *against* calling Mr. Smith to join a suppression team without training and equipment, as the state safety agency recognized when it cited ACFD for this "[s]erious" violation. JA395; JA391–98.

Because Mr. Smith has presented evidence that supports multiple retaliation theories, and because ACFD has not shown that it acted for nonretaliatory reasons, the district court erred in granting summary judgment.

## III. ACFD violated the Free Exercise Clause.

Multiple recent Supreme Court decisions emphasize the strength of the Free Exercise Clause's protections against government actions that single out religious belief. *See, e.g.*, *Kennedy*, 597 U.S. 507; *Fulton v. City of Philadelphia*, 593 U.S. 522 (2021); *Tandon v. Newsom*, 593 U.S. 61 (2021) (per curiam). The Court has consistently held that a policy must withstand strict scrutiny if it is either not generally applicable or

nonneutral. *See Kennedy*, 597 U.S. at 526 ("Failing either the neutrality or general applicability test is sufficient to trigger strict scrutiny."). And the mere existence of "a mechanism for individualized exemptions" renders a law not generally applicable and subject to strict scrutiny. *Fulton*, 593 U.S. at 533; *Tandon*, 593 U.S. at 62; *see also* Brief of *Amici Curiae* CLS and NAE, Dkt. No. 34, at 4–10 (tracing history of this principle).

Yet ACFD appears oblivious to these landmark decisions, failing to address their application here. ACFD ignores Mr. Smith's arguments that the discretionary procedures for individualized exemptions and the categorical call-back exemption make the no-beard policy not generally applicable, and that selective enforcement renders it nonneutral. Opening Br. at 44–51.

Indeed, ACFD's only responses to those arguments are (1) that it doesn't allow "any categorical exemptions to the no-beard rule," (2) that Mr. Smith "has presented no evidence that the policy is enforced inconsistently," and (3) that it has denied secular accommodations in the past. Resp. Br. at 15–16. The first two points are incorrect: the emergency call-back exemption (which ACFD's argument never mentions) is a

categorical exemption allowing off-duty firefighters to wear beards; and the record shows that many in administrative roles who "don't plan on fighting [] fires . . . or [whose] job duties and responsibilities[] do not call for it" aren't fit tested as ACFD's policy prescribes. JA301–02; *see also* JA289–90 (fit-test records). As for ACFD's denial of previous accommodation requests, the Supreme Court has underscored that it's the existence of exemption procedures that matters, "regardless whether any exceptions have been given." *Fulton*, 593 U.S. at 537; *see also Tandon*, 593 U.S. at 62 (treating some secular activities as poorly as religious exercise is no excuse). So none of ACFD's responses change the fact that its formal system for granting individualized exemptions from its Grooming Policy, JA669, JA192, JA196, JA518–20; its grant of "authority to deviate from this procedure" to high-level officers, JA073; and the call-back exemption each triggers strict scrutiny.

Instead of addressing Mr. Smith's arguments, ACFD asks this Court to hold for the first time that "[a] government law that is facially neutral and not generally applicable, can only reach intermediate scrutiny and not strict scrutiny." Resp. Br. at 14. But that approach does not exist in free exercise caselaw.

ACFD claims a footnote in *Fraternal Order of Police v. City of Newark* supplies its novel rule. 170 F.3d 359 (3d Cir. 1999); Resp. Br. at 14–15. Not so. The footnote said the Court "assume[d] that an intermediate level of scrutiny applie[d]" to a non-generally applicable policy[6] because the government's "actions [could] not survive even that level of scrutiny." *Fraternal Ord.*, 170 F.3d at 366 n.7. In other words, the policy at issue in *Fraternal Order* could not "survive any degree of heightened scrutiny." *Id.* at 367. And the same footnote acknowledged that the guiding Supreme Court cases at that time, *Smith* and *Lukumi*, "speak in terms of strict scrutiny" for free exercise violations. Far from *Fraternal Order* "applying" intermediate scrutiny, a footnote merely referenced it, while acknowledging that the Supreme Court applies strict scrutiny.

Since *Fraternal Order*, a long line of Supreme Court cases has cemented the strict-scrutiny approach. Indeed, the Court recently applied strict scrutiny to a public employee's free exercise challenge—the kind of challenge the *Fraternal Order* footnote contemplated. *See*

---

[6] Presumably because the *Fraternal Order* policy was not generally applicable, ACFD jumps to the conclusion that "facial neutrality" is required to reach strict scrutiny. *See* Resp. Br. at 15. But even if *Fraternal Order* had applied a lower tier of scrutiny to a non-generally applicable policy (it didn't), it did not even mention facial neutrality.

*Kennedy*, 597 U.S. at 526–27. Nothing in *Kennedy* suggests that the Court even considered applying intermediate scrutiny, and this Court has never done so either.[7]

In any event, ACFD's denial of Mr. Smith's accommodation fails all levels of scrutiny. Neither safety nor regulations, ACFD's asserted interests, justifies burdening Mr. Smith's religion.

To start, ACFD entirely fails to argue that its actions satisfy strict scrutiny. And in discussing intermediate scrutiny and rational basis, ACFD ignores the principle that "broadly formulated interests" are insufficient to overcome the Free Exercise Clause. Opening Br. at 52–53; *Fulton*, 593 U.S. at 541. ACFD only argues its interests justify requiring "its firefighters not wear[] beards" as a general matter, Resp. Br. at 16–19; it fails to identify with "particularity" the harm that would result from granting an exemption specifically to Mr. Smith. *Wisconsin v. Yoder*, 406 U.S. 205, 236 (1972).

In any event, Mr. Smith's beard would not compromise safety. *See supra* I.A. And safety regulations don't impede his accommodation,

---

[7] In *Tenafly Eruv Association v. Borough of Tenafly*, this Court mentioned *Fraternal Order*'s reference to intermediate scrutiny but applied strict scrutiny instead. 309 F.3d 144, 165 n. 24, 167 n.27, 171–78 (3d Cir. 2002).

because ACFD didn't raise them with Mr. Smith until after litigation began and because they don't apply to Mr. Smith's position. *See supra* I.B.2; *Kennedy*, 597 U.S. at 543 n.8.

ACFD points to two out-of-circuit cases it claims support its reliance on the regulations. Resp. Br. at 17 (citing *Bey v. City of N.Y.*, 999 F.3d 157 (2d Cir. 2021) and *Hamilton v. City of N.Y.*, 563 F. Supp. 3d 42 (E.D.N.Y. 2021)). They do the opposite. Only *Hamilton*, a district court case, addressed a free exercise claim. And both cases *upheld* the New York Fire Department's beard accommodation that moved full-duty firefighters to non-suppression roles. *See Bey*, 999 F.3d at 162 & n.3. So the fire department in those cases offered an accommodation analogous to what Mr. Smith requests here: to wear a beard in a position that does not involve suppression.

A jury could easily conclude that forcing Mr. Smith to shave is not narrowly tailored, substantially related, or even rationally related to safety concerns or the regulations. Mr. Smith's free exercise claims should survive.

## IV. ACFD violated the Equal Protection Clause.

Mr. Smith put forward evidence that ACFD treated him worse than two categories of secular comparators: off-duty firefighters and previous Air Mask Technicians. Opening Br. at 60–62. That is enough to maintain his equal protection claim. *Dique v. N.J. State Police*, 603 F.3d 181, 184 n.5 (3d Cir. 2010); *see Hassan v. City of N.Y.*, 804 F.3d 277, 294 (3d Cir. 2015). Instead of addressing those comparators, ACFD makes two arguments that misconstrue the law and facts.

First, ACFD argues that "all other members of the ACFD" are subject to the same Grooming Policy. Resp. Br. at 22–23. But the record shows that high-level officers have "[a]uthority to deviate" from the policy and that many employees have not been fit-tested for years. JA073; JA289–90. Moreover, Mr. Smith is not similarly situated to "all other members of the ACFD." Comparators are defined according to the government's stated justification—here, safety and regulations. *See Stradford v. Sec'y Pa. Dep't of Corr.*, 53 F.4th 67, 74 (3d Cir. 2022). Because Mr. Smith doesn't fight fires or wear an SCBA, his relevant comparators are others with low likelihoods of engaging in those activities: off-duty firefighters and other Air Mask Technicians.

Second, ACFD suggests Mr. Smith must show direct evidence of hostility to prove "intentional or purposeful discriminatory purpose." Resp. Br. 23. That misunderstands the law. Evidence of differential treatment *is* evidence of intentional discrimination, and Mr. Smith has provided that evidence.[8] *See Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005).

Like his other claims, Mr. Smith's equal protection claims should have survived summary judgment.

## V. A preliminary injunction is appropriate on remand.

The district court incorrectly denied Mr. Smith's preliminary injunction motion on the grounds that his case was unlikely to succeed on the merits. JA032; *see* Opening Br. at 62–63. But as explained above and in his Opening Brief, Mr. Smith has strong arguments on all his claims. And ACFD doesn't contest that he has satisfied all the other preliminary injunction factors. *See* Resp. Br. at 42–43. Mr. Smith is

---

[8] Contrary to ACFD's contention, Resp. Br. at 23, past interactions say nothing about whether ACFD discriminated here. Regardless, Mr. Smith's hand-scan accommodation was granted only after he filed an EEOC charge, and his transfer to Air Mask Technician was a promotion, not an accommodation, JA164. Any material dispute about these facts should be left to a jury.

entitled to a preliminary injunction so that he can practice his faith while his claims proceed.

## CONCLUSION

This Court should reverse the district court's summary judgment and preliminary injunction rulings.

Respectfully submitted,

*/s/ Kayla A. Toney*
_____

KAYLA A. TONEY
  *Counsel of Record*
  VA Bar No. 93815
REBECCA R. DUMMERMUTH
FIRST LIBERTY INSTITUTE
1331 Pennsylvania Ave. NW, Ste. 1410
Washington, DC 20004
(202) 918-1554
ktoney@firstliberty.org

JEFFREY C. MATEER
DAVID J. HACKER
JUSTIN E. BUTTERFIELD
FIRST LIBERTY INSTITUTE
2001 W. Plano Pkwy, Ste. 1600
Plano, TX 75075
(972) 941-4444

JOSHUA C. MCDANIEL
PARKER W. KNIGHT III
KATHRYN F. MAHONEY
HARVARD LAW SCHOOL
  RELIGIOUS FREEDOM CLINIC
6 Everett Street, Suite 5110
Cambridge, MA 02138
(617) 496-4383

Dated: July 24, 2024

## COMBINED CERTIFICATIONS

I, the undersigned, hereby certify the following:

1. I am a member of the Bar of the United States Court of Appeals for the Third Circuit.

2. This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 6499 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

3. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century.

4. The text of the electronic and paper versions of the foregoing brief are identical.

5. A virus check was performed on this brief using Sophos Endpoint Virus Scan v. 10.5.1, and no virus was indicated.

6. On July 24, 2024, I caused the foregoing to be electronically filed with the Clerk of Court using CM/ECF System, which will send notice of such filing to all registered users.

Dated: July 24, 2024

*s/ Kayla A. Toney*
Kayla A. Toney